**UNITED STATES of America**

v.

**Calvin GRIER, III, Appellant.**

**No. 07–3507.**

United States Court of Appeals, Third Circuit.

Argued March 5, 2009.

Filed: Oct. 26, 2009.

William A. Behe [Argued] Office of United States Attorney, Harrisburg, PA, for Appellee.

Edward J. Rymsza, III [Argued], Miele & Rymsza, Williamsport, PA, for Appellant.

Before: SLOVITER and HARDIMAN, Circuit Judges and POLLAK * District Judge.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

This appeal requires us to interpret the United States Sentencing Guidelines (USSG) as applied to Calvin Grier III, who was deemed a career offender under USSG § 4B1.1. The District Court—following the guidance of the United States Probation Office—held it had discretion to grant Grier a downward departure under

---

* Honorable Louis H. Pollak, Senior Judge of the United States District Court for the East-ern District of Pennsylvania, sitting by designation.

USSG § 4A1.3 as to his criminal history category, but not with respect to his offense level. In *United States v. Shoupe*, 35 F.3d 835 (3d Cir.1994),[1] we held that a prior version of § 4A1.3 authorized district courts to reduce a career offender's offense level *and* criminal history category when his career offender status over-represents his criminal history and likelihood of recidivism. The question presented in this case is whether *Shoupe* still controls in light of the 2003 amendments to the Sentencing Guidelines and the sea change in sentencing effectuated by the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and our subsequent decisions.

## I.

Grier was indicted on one count of conspiracy to distribute and possess with the intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 841. Pursuant to a plea agreement, the Government filed a one-count superseding Information, which reduced the charged amount of marijuana to less than 50 kilograms. The plea agreement also recommended that Grier be found responsible for the distribution of between 250 grams and 1 kilogram of marijuana.

The Presentence Investigation Report (PSR) classified Grier as a career offender under USSG § 4B1.1, which put him in criminal history category VI and increased his base offense level from 8 to 17. *See* USSG § 4B1.1 (requiring use of the offense level in the career offender table when it is greater than the offense level for the underlying crime). After a two-point reduction for acceptance of responsibility, Grier's total offense level became 15.

The PSR calculated Grier's advisory Guidelines range to be 41 to 51 months of imprisonment and noted that, pursuant to USSG § 4A1.3 as written, the District Court could depart downward if it found that category VI overrepresented Grier's prior record.

Grier filed various objections to the PSR. Specifically, Grier claimed that his career offender designation under USSG § 4B1.1 overstated his criminal history; he requested a downward departure pursuant to USSG § 5H1.6 based on the extraordinary family circumstance that he was a single parent caring for a daughter afflicted with spina bifida; and he sought a downward variance based on the factors set forth in 18 U.S.C. § 3553(a).

At sentencing, the District Court agreed that application of the career offender enhancement overstated Grier's criminal history. Relying on information provided by the probation officer, the District Court stated that while it could depart downward by one criminal history category, it could not adjust Grier's offense level pursuant to § 4A1.3. After departing downward from criminal history category VI to criminal history category V, the District Court fixed Grier's final Guidelines range at 37 to 46 months of imprisonment. After reviewing Grier's request for a variance, the District Court sentenced him to 37 months incarceration. Grier filed this timely appeal, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

■ Grier's principal argument on appeal is that the District Court erroneously held that it had discretion to reduce only

---

**1.** *United States v. Shoupe* came before this Court three times. We are principally concerned with the third and final appeal, decided in 1994, and all references to *Shoupe* relate to that decision, unless noted otherwise.

his criminal history category but not his offense level.

We review the District Court's interpretation of the Sentencing Guidelines *de novo, United States v. Pojilenko,* 416 F.3d 243, 246 (3d Cir.2005), and scrutinize its findings of fact for clear error, *United States v. Wise,* 515 F.3d 207, 217 (3d Cir. 2008). In reviewing Grier's sentence, we must first ensure that the District Court "committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). We cannot, however, review a district court's refusal to grant a downward departure pursuant to USSG § 4A1.3(b) "unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *United States v. Puckett,* 422 F.3d 340, 344–45 (6th Cir.2005) (citations omitted) (confirming that this standard survived the change in the Guidelines after *Booker*).

### A.

In *Shoupe,* we held that "a sentencing court may depart downward on a defendant's base offense level if the defendant's career offender status overrepresents his criminal history and likelihood of recidivism." *Shoupe,* 35 F.3d at 836. *Shoupe* relied upon the following language of USSG § 4A1.3:

> If reliable information indicates that the criminal history category does not adequately reflect ... the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.

USSG § 4A1.3 (1994). In the absence of a definition of the word "departing," we concluded that the sentencing court could lower both the criminal history category and the offense level, reasoning that "[b]ecause career offender status enhances both a defendant's criminal history category and offense level, ... a sentencing court may depart in both under the proper circumstances." 35 F.3d at 838.

At the time *Shoupe* was decided, four courts of appeals had already ruled that USSG § 4A1.3 allowed for downward departures in both criminal history category and offense level. *See United States v. Bowser,* 941 F.2d 1019, 1026 (10th Cir. 1991); *United States v. Reyes,* 8 F.3d 1379, 1388–89 (9th Cir.1993); *United States v. Clark,* 8 F.3d 839, 846 (D.C.Cir.1993); *United States v. Fletcher,* 15 F.3d 553, 556–57 (6th Cir.1994). The Second and Eighth Circuits later adopted this interpretation. *See United States v. Rivers,* 50 F.3d 1126, 1131 (2d Cir.1995); *United States v. Greger,* 339 F.3d 666, 672 (8th Cir.2003). Only the Eleventh Circuit took a different position, holding that "§ 4A1.3 departures must proceed on only the horizontal axis and not the vertical axis." *United States v. Smith,* 289 F.3d 696, 711 (11th Cir.2002).

### B.

The Government argues that we need not apply *Shoupe* because that case is no longer good law in light of the "changed sentencing landscape" provided by *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and *United States v. Gunter,* 462 F.3d 237 (3d Cir. 2006) as well as the 2003 amendment to USSG § 4A1.3.

We disagree with the Government's analysis of the impact of *Booker.* Neither *Booker* nor *Gunter* affects the validity of *Shoupe.* After *Booker,* a district court must undertake a three-step process in imposing a sentence: (1) calculate the applicable Guidelines range, (2) formally rule

on any departure motions, and (3) exercise its discretion in applying the factors set forth in 18 U.S.C. § 3553(a). *See Gunter*, 462 F.3d at 247. By making the Guidelines advisory, *Booker* gave district courts discretion at step three—but only after steps one and two have been completed properly. *See United States v. Pelletier*, 469 F.3d 194, 203 (1st Cir.2006); *cf. United States v. Solis–Bermudez*, 501 F.3d 882, 886–87 (8th Cir.2007) (discussing the district court's discretion post-*Booker* to decline to depart upward under USSG § 4A1.3(a), but to vary upward under § 3553(a)(1) and (a)(2)(c) on the basis of criminal history).

Contrary to the Government's argument, this appeal involves a *step-two* departure motion. Thus, the fact that *Booker* made the Guidelines advisory and gave discretion to district judges under § 3553(a) does not affect our analysis of § 4A1.3 because Grier's step-two departure motion must be decided correctly before the district judge exercises her discretion at step three. *See United States v. King*, 454 F.3d 187, 196 (3d Cir.2006).[2] Therefore, we hold initially that *Shoupe* has not been affected by any subsequent decision of the Supreme Court or this Court.

### C.

Although *Shoupe* was not affected by the advisory nature of the Guidelines after *Booker*, we must consider the Government's argument that the 2003 amendments to the Guidelines displaced *Shoupe*. As we shall explain, the 2003 amendments

to the Guidelines have displaced *Shoupe*, but not for the reason initially claimed by the Government.

■ Section 4A1.3 was amended extensively by the Sentencing Commission in 2003. As amended, § 4A1.3 provides for departures based on overstated criminal history:

If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

USSG § 4A1.3(b)(1) (2003). The 2003 version of § 4A1.3, though similar to the 1994 version in its provision for downward departures, differs in one respect critical to this appeal. The 1994 version used the word "departing," while the 2003 version references a "departure." As previously noted, the Guidelines in effect at the time *Shoupe* was decided did not include a definition of the term "departing" as the term was used when describing a downward adjustment pursuant to § 4A1.3. The 2003 amendments filled this gap by adding a definition of "departure" to a pre-existing glossary of commonly used Guidelines terms. This glossary is found in the Commentary to USSG § 1B1.1, and provides:

"Departure" means (i) for purposes other than those specified in subdivision (ii), imposition of a sentence outside the applicable guidelines range or of a sentence that is otherwise different from the guidelines sentence; and (ii) for pur-

---

**2.** Obviously, the Supreme Court's decision in *Booker* changed the sentencing landscape insofar as it allows sentencing courts to achieve at step three what could not be accomplished at step two. When *Shoupe* was decided, the Guidelines were mandatory and district courts had recourse only to departures to ensure a defendant's criminal history was

proper. In the post-*Booker* regime, however, the fact that a defendant would not be eligible for a reduction in offense level at step two is far less important because of the broad discretion district judges possess to apply the § 3553(a) factors at step three. *See generally United States v. Tomko*, 562 F.3d 558 (3d Cir.2009) (en banc).

poses of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category), assignment of a criminal history category other than the otherwise applicable criminal history category in order to effect a sentence outside the applicable guideline range. "Depart" means grant a departure.

USSG § 1B1.1 cmt. n. 1(E). In other words, "departure"—as it is used in the current version of § 4A1.3—"means ... assignment of a criminal history category other than the otherwise applicable criminal history category," and nothing else.

A comparison of the two subparts of the definition confirms that offense level departures are not permitted under the current version of § 4A1.3. Subpart (i) defines "departure" as "imposition of a sentence outside the applicable guidelines range or ... that is otherwise different from the guidelines sentence." USSG § 1B1.1 cmt. n. 1(E). Because this definition does not specifically reference offense level or criminal history category, adjustments to both axes are presumably included within the definition. If the Sentencing Commission intended to include offense level departures under § 4A1.3, there would have been no need for a separate definition of "departure" under subpart (ii); a single definition would have sufficed. By carving out a separate definition of "departure" for purposes of § 4A1.3, the Commission limited the type of departures available thereunder.

Basic tenets of statutory construction confirm our interpretation. *See United States v. Milan*, 304 F.3d 273, 294 (3d Cir.2002) (canons of construction apply when interpreting the Sentencing Guidelines). Consistent with *expressio unius est exclusio alterius*, the inclusion of criminal history category in the definition without mention of offense level expresses the Commission's intent to preclude offense level departures under § 4A1.3. *See United States v. Landmesser*, 378 F.3d 308, 312 (3d Cir.2004) (applying expressio unius est exclusio alterius to interpret the Sentencing Guidelines).

Arguing against the ongoing relevancy of *Shoupe* in light of the 2003 amendments, the Government contends that the addition of § 4A1.3(b)(3)(A) sounded the death knell for *Shoupe*. Section 4A1.3(b)(3)(A) limits downward departures to one criminal history category when a defendant's criminal history is overstated. The amended guideline provides:

> (b) Downward Departures—
>
> (1) Standard for Downward Departures—If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.
>
> . . .
>
> (3) Limitations.—
>
> (A) Limitation on Extent of Downward Departure for Career Offender.—The extent of a downward departure under this subsection for a career offender within the meaning of § 4B1.1 (Career Offender) may not exceed one criminal history category.

USSG § 4A1.3(b) (2003).

While § 4A1.3(b)(3)(A) limits the *extent* of a downward departure under § 4A1.3, it is the definitional amendment at § 1B1.1 that limits the *type* of departure available under § 4A1.3, thereby prohibiting downward departures in offense level and superseding *Shoupe*.[3]

---

**3.** It appears that none of our sister circuits

has directly addressed the question of wheth-

## D

Grier argues that the 2003 amendments did not affect the District Court's ability to grant downward departures in offense level because the plain language of § 4A1.3(b)(3)(A) does not expressly prohibit vertical departures. He further argues that the language of § 4A1.3 should not be read to preclude such departures in the absence of any indication to do so from the Sentencing Commission.[4] Tellingly, Grier fails to address the additional limitations placed on § 4A1.3 departures by the 2003 amendment to § 1B1.1.

Contrary to Grier's argument, the Sentencing Commission demonstrated its intent to preclude departures not specifically enumerated in § 4A1.3. In commentary explaining the "reason for amendment," the Commission stated that the 2003 amendments were a response to a directive from Congress in the PROTECT Act "to promulgate (1) Appropriate amendments to the sentencing guidelines to ensure that the incidence of downward departures is substantially reduced …." In doing so, the Commission anticipated that the amendments would achieve that congressional intent:

> The Commission anticipated that this amendment will substantially reduce the incidence of downward departures by prohibiting several factors as grounds for departure, restricting the availability of certain departures, clarifying when departures are appropriate, and limiting the extent of departure permissible for certain offenders.

USSG App. C, amend. 651, Reason for Amendment (2003).

With respect to the specific provisions at issue in this case, the Commission stated that the purpose of the amendment to § 1B1.1 was "to provide uniform definitions of departure, upward departure, and downward departure." Regarding the amendment to § 4A1.3, the Commission stated:

> § 4A1.3(b) provides that a downward departure may be warranted if reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.

> The amendment, however, adds several prohibitions and limitations to the availability of downward departures based on criminal history … Section 4A1.3(b) also contains certain limitations on the extent of departure available under this provision. Specifically, a downward departure pursuant to this section for a

---

er district courts may still grant downward departures in offense level after the 2003 amendments; however, two district courts have held that sentencing courts are now limited only to departing as to criminal history category. *See United States v. Menafee*, 2008 WL 3285254 * 1 n. 2 (D.Conn. Aug.7, 2008) (holding that 2003 amendment to § 1B1.1 definition of departure "appears to have prohibited vertical departures pursuant to Section 4A1.3" even though "the Second Circuit has yet to clarify the issue") *amended on reconsideration by, United States v. Menafee*, 626 F.Supp.2d 270, 271 (D.Conn.2009) (reaffirming that vertical downward departures are no longer permitted after 2003 amendment); *United States v. Nielsen*, 427 F.Supp.2d 872,

878 (N.D.Iowa 2006) (holding that, in recognition of circuit split over downward departures under § 4A1.3, "in 2003, the Commission amended § 4A1.3 and, in accordance with Eleventh Circuit's view, specifically limited departures for career offenders to one criminal history category.").

4. Grier also argues that *Shoupe* remains good law because this Court has cited it with approval in two not-precedential opinions, even after the 2003 amendments. This argument is unpersuasive because those opinions fail to address *Shoupe's* continuing validity in light of the 2003 amendment to USSG § 1B1.1.

career offender within the meaning of § 4B1.1 (Career Offender) may not exceed one criminal history category.

USSG App. C, amend. 651, Reason for Amendment (2003). In light of the foregoing, the Commission intended to preclude departures in offense level under § 4A1.3. Permitting downward departures in offense level which are not enumerated in the Guidelines would thwart the Commission's purpose of reducing the incidence and extent of downward departures, and of providing a uniform definition of "departure." Accordingly, we reject Grier's argument.

### III.

■ Grier also challenges the substantive reasonableness of his sentence, claiming that the District Court abused its discretion in applying the factors set forth in 18 U.S.C. § 3553(a). Specifically, Grier asserts that a 37–month term of incarceration was "greater than necessary" to achieve the goals enumerated in § 3553(a) in light of the overstated nature of his criminal history and Grier's family situation, as the single father of a child with spina bifida. Our review of the record shows that the District Court painstakingly considered Grier's arguments and the § 3553(a) factors before finding that a downward variance from the Guidelines range was unwarranted. Accordingly, we hold that the District Court did not abuse its discretion in imposing a 37–month term of incarceration. *See United States v. Tomko,* 562 F.3d 558, 568 (3d Cir.2009) (en banc).

### IV.

■ In sum, the 2003 amendment to USSG § 1B1.1, which added a definition of "departure" for purposes of § 4A1.3, prohibits district courts from making downward departures in offense level and su-

persedes our prior holding to the contrary in *Shoupe.* Therefore, the District Court properly applied the Guidelines when it held that it could not depart downward in offense level under § 4A1.3 on the basis of Grier's overstated criminal history. Furthermore, the District Court adequately considered Grier's argument for a downward variance and the 37–month term of incarceration was substantively reasonable. Accordingly, we will affirm the judgment of the District Court.