**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-1313

_____

UNITED STATES OF AMERICA

v.

JACK JARVIS BRYAN,
                              Appellant


_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 08-cr-00031)
District Court Judge:  Honorable Alan N. Bloch

_____

Submitted under Third Circuit L.A.R. 34.1(a)
November 10, 2009

_____

Before: AMBRO, GARTH, and ROTH, Circuit Judges

(Opinion filed: May 7, 2010)

_____

**OPINION**

_____

ROTH, Circuit Judge:

   Jack Jarvis Bryan appeals the 60-month sentence imposed by the District Court

after he pled guilty to conspiracy to defraud a financial institution. We find no error and will affirm.

I.

In May 2007, Jack Bryan and another man, Jason Majeski, entered a PNC Bank branch in Robinson Township, Pennsylvania, seeking a loan in the amount of $234 million. Bryan and Majeski represented to bank officials that they intended to use the loan proceeds to purchase businesses and develop real estate property that Bryan owned in New Mexico. Over the next several months, Bryan and Majeski met several times with a manager of PNC's Private Client Group to discuss the loan application.

In connection with the application, Bryan submitted financial statements and documents that contained numerous material misrepresentations. In particular, Bryan represented to PNC that he earned a salary of $120,000 and commissions of $50,000; that he had accounts receivable worth $253,000; that he owned $234 million of securities that were available as collateral; that he owned real estate worth $164 million; and that he was a graduate of the University of Southern California Law School and a member of the California Bar Association. All of that information was false. Asset values on financial schedules submitted to PNC were fabricated, as were the federal tax returns provided by Bryan. Although Bryan does own unimproved property in New Mexico, its value is in the neighborhood of several thousand dollars, and the property is encumbered by tax liens.

Bryan is not a law school graduate, and is not a member of the California Bar Association. The misrepresentations were discovered, and PNC never extended the loan.

In January 2008, Bryan and Majeski were indicted and charged with conspiring to defraud a financial institution, in violation of 18 U.S.C. § 371. Bryan pled guilty. At sentencing, the District Court adopted the findings of the presentence investigation report (PSR), which calculated Bryan's offense level as 31 and his criminal history category as IV. This would have yielded an advisory Guidelines imprisonment range of 151-188 months, but because the statutory maximum term of imprisonment for a violation of 18 U.S.C. § 371 is 60 months, the Guidelines range also became 60 months, pursuant to U.S.S.G. § 5G1.1(a).

The offense level computation started with a base offense level of 6. See U.S.S.G. §§ 2X1.1 (base offense level for conspiracy is the base offense level for the substantive offense the defendant conspired to commit), 2B1.1(a)(2) (providing base offense level of 6 for fraud and related offenses if, as here, the offense of conviction has a statutory maximum term of imprisonment of less than 20 years). Pursuant to § 2B1.1(b)(1)(O), 28 levels were added because the loss was determined to exceed $200 million. Finally, three levels were subtracted for acceptance of responsibility under § 3E1.1, resulting in an adjusted offense level of 31.

The District Court imposed the statutory maximum sentence (and Guidelines advisory sentence) of 60 months' imprisonment.[1]  Bryan filed a timely notice of appeal.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231.  Our jurisdiction is conferred by 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

We generally review legal interpretations of the Sentencing Guidelines de novo.  United States v. Grier, 585 F.3d 138, 141 (3d Cir. 2009).  The meaning of the term "loss" is an issue of Guidelines interpretation over which we exercise plenary review.  United States v. Napier, 273 F.3d 276, 278 (3d Cir. 2001).  However, the *amount* of loss attributable to Bryan – loss either actually suffered by the victim, or merely intended by Bryan – is a factual finding that we review for clear error.  United States v. Dullum, 560 F.3d 133, 137 (3d Cir. 2009); United States v. Ali, 508 F.3d 136, 143 (3d Cir. 2007).

## III.

Bryan presses a single claim on appeal.  He argues that because the fraud was discovered before PNC disbursed any money, there was no "loss," and the District Court erred in adding 28 offense levels pursuant to U.S.S.G. § 2B1.1(b)(1)(O).

This argument ignores the application notes to § 2B1.1.  A Sentencing Guidelines application note "is binding unless it runs afoul of the Constitution or a federal statute, or is plainly erroneous or inconsistent with the section of the guidelines it purports to

---

[1]The sentence also included three years of supervised release and a special assessment of $100.

interpret." United States v. Booth, 432 F.3d 542, 548 n.8 (3d Cir. 2005). Here, application note 3(A) provides: "Subject to the exclusions in subdivision (D), loss is the greater of actual loss or intended loss."[2] See United States v. Nathan, 188 F.3d 190, 208 (3d Cir. 1999) ("In general, the loss from fraud is the financial loss actually suffered by the victim, *or the loss that the criminal intended the victim to suffer if that is greater*.") (emphasis added); United States v. Kopp, 951 F.2d 521, 531 (3d Cir. 1991) (interpreting an earlier version of the Sentencing Guidelines). The note further provides: "'Intended loss' (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur . . . ." U.S.S.G. § 2B1.1 cmt. n.3(A)(ii). In determining the amount of loss, the District Court clearly was not limited to the actual loss suffered by PNC.

Bryan's argument may be alternatively construed as contending that insufficient evidence supported the District Court's conclusion that Bryan intended to cause a loss of $243 million, the full amount of the loans sought. The use of the $243 million figure amounts to a factual finding by the District Court that Bryan intended to abscond with all of the loan proceeds, without repaying any portion thereof.

The record shows that the District Court did not simply assume that the $234 million face value of the loan fraudulently sought was the intended loss. Bryan raised this

---

[2]None of the exclusions in subdivision (D), pertaining to interest and costs to the government and/or victims, is relevant here.

issue in the District Court in the form of an objection to the PSR before sentencing. In ruling on the objection, the District Court recognized and addressed the possibility that Bryan might have intended to repay the loan, or some part of it. The court found:

> There is nothing in the record to indicate any sincere intention to repay the $234,000,000 loan had it been obtained. Indeed, although Defendant makes completely unverified and unsubstantiated claims of having assets totaling $469.1 million, the only verifiable assets possessed by Defendant would be woefully inadequate to repay a loan of that amount. At best, Defendant has a few hundred thousand dollars in assets. Likewise, his income of $542 per month in social security benefits would not in any way enable him to pay back hundreds of millions of dollars. Even if the Court accepted Defendant's claim that he was earning an annual salary of $120,000 at the time, a claim he has failed to substantiate, such an income still would not come close to allowing the repayment of $234,000,000.

> In addition to having absolutely no ability to repay a loan the size of the one he sought, the fact that Defendant has admitted to submitting fraudulent documents in an attempt to obtain the loan completely undercuts any claim of a sincere intention to repay the loan. Moreover, Defendant's criminal history of fraud and financial deception demonstrates a lack of a sincere intention to repay the loan. He has a prior conviction for fraudulent loan application and served a 10-year federal sentence for a separate fraud offense. He has other convictions demonstrating financial dishonesty from as recent as 2006. To claim . . . that he had a sincere intent to repay the loan he fraudulently sought when he had nowhere near the assets and income to do so and a history of fraud and financial deception is completely lacking in credibility.

> Accordingly, the Court finds no merit in Defendant's objection.

S.A. 11-12 (footnote omitted). It is quite evident that the District Court considered the issue and found that Bryan indeed intended to cause a loss in the entire amount of the loan.

-6-

This factual determination was not clearly erroneous, for substantially the reasons given by the District Court. Bryan's assets were woefully inadequate to repay the loan, and Bryan had a history of committing financial crimes. This circumstantial evidence is sufficient to support the District Court's finding that Bryan intended to permanently deprive PNC of the $234 million. The court was thus correct to apply the 28-level enhancement corresponding to a loss of that amount.

IV.

For the reasons given above, we will affirm the District Court's judgment of January 26, 2009.