NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3937
_____

UNITED STATES OF AMERICA

v.

ZIA BERISHA,

Appellant.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cr-00017)
District Judge: Honorable Robert B. Kugler


_____

Submitted Under Third Circuit LAR 34.1(a)
July 1, 2010

Before: SLOVITER, BARRY and HARDIMAN, *Circuit Judges*.

(Filed:July 2, 2010)


_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Zia Berisha pleaded guilty to conspiracy to distribute ecstacy in violation of 21 U.S.C. § 846. The District Court imposed a sentence of 176 months incarceration and Berisha filed this timely appeal, challenging only his sentence. Berisha claims the District Court abused its discretion when it denied his motion for a downward departure for overstated criminal history pursuant to § 4A1.3(b)(1) of the United States Sentencing Guidelines (USSG or Guidelines). We will affirm.

I.

Because we write for the parties, who are familiar with the facts and procedural history of the case, we recount only those aspects of the case that are essential to our decision.

Berisha pleaded guilty, pursuant to a written plea agreement with the Government, to a one-count information charging him with conspiring to distribute and possess with intent to distribute 3,4-methylenedioxy-methamphetamine (ecstacy) from May 2006 to November 2006. The plea agreement stipulated a base offense level of 28, a 2-level enhancement for being an organizer of the criminal activity, and a 3-level reduction for timely acceptance of responsibility, resulting in a total offense level of 27.

Pursuant to the plea agreement, neither Berisha nor the Government would appeal the sentence if it fell within or below the Guidelines range associated with a total offense level of 27. The plea agreement cautioned that "[t]his agreement to stipulate, however,

2

cannot and does not bind the sentencing judge, who may make independent factual findings and may reject any or all of the stipulations entered into by the parties." Moreover, the plea agreement did not include any stipulations regarding Berisha's criminal history category and each party reserved the right to appeal the District Court's determination in that regard.

The calculations contained in the Presentence Investigation Report (PSR) differed in several ways from the plea agreement. First, the PSR attributed a much higher quantity of drugs to Berisha, including large amounts of oxycodone. The PSR also rejected any role enhancement, finding that Berisha was equally responsible with his partner for the drug distribution. Most relevant here, the probation office found Berisha to be a career offender under USSG § 4B1.1 based on past convictions for possession of cocaine with intent to distribute and aggravated assault with bodily injury.

Berisha objected to the PSR's inclusion of conduct related to oxycodone distribution and to his classification as a career offender. He also moved for a downward departure under USSG § 4A1.3(b)(1) based on overstated criminal history. Berisha argued that, though the prior convictions cited by the PSR technically satisfied the requirements of USSG § 4B1.1, career offender status overrepresented the seriousness of those charges because he was sentenced to only probation in each case.

At the sentencing hearing, the District Court heard testimony from the FBI case agent regarding the quantity of drugs for which Berisha should be held responsible. The

3

Court also invited argument regarding Berisha's motion for a downward departure. At the conclusion of the testimony and argument, the District Court concluded that Berisha could be held responsible for some, but not all, of the oxycodone cited in the PSR. In the final analysis, however, this finding was not material, because Berisha's offense level was driven by his classification as a career offender, which resulted in a total offense level of 29. The District Court then rejected Berisha's argument that his designation as a career offender overstated the seriousness of his criminal history and denied his motion for a downward departure, leaving him with a criminal history category of VI. Thus, Berisha faced a Guidelines range of 151 to 188 months imprisonment. After considering the factors in 18 U.S.C. § 3553(a) and statements from Berisha and his family, the District Court sentenced Berisha to a within-Guidelines sentence of 176 months imprisonment, 4 years of supervised release, and a $100 special assessment.

On appeal, Berisha argues that his sentence is unreasonable because the District Court erred in denying his motion for downward departure and in failing to meaningfully consider all of the § 3553(a) factors. We consider these arguments in turn.

## II.

## A.

Berisha's argument that the District Court abused its discretion when it denied his motion for a downward departure under USSG § 4A1.3 is plainly without merit. We lack jurisdiction over a district court's denial of a discretionary downward departure. *See*

4

*United States v. Vargas*, 477 F.3d 94, 103 (3d Cir. 2007); *United States v. Cooper*, 437 F.3d 324, 332 (3d Cir. 2006). Jurisdiction arises only if the district court's refusal was based on the mistaken belief that it lacked discretion to depart, an argument Berisha has not made here. *See United States v. Dominguez*, 296 F.3d 192, 194-95 (3d Cir. 2002).

B.

To the extent that Berisha argues that the District Court abused its discretion by refusing to vary downward on the basis of his purportedly overstated criminal history (and it is unclear that he does so) we reject that argument as well. *See United States v. Grier*, 585 F.3d 138, 142 n.2 (3d Cir. 2009) (recognizing that, after *United States v. Booker*, 543 U.S. 220 (2005), sentencing court may achieve effect of a § 4A1.3(b)(1) departure by varying downward at the third stage of sentencing). Berisha contended that the career offender enhancement exaggerated the seriousness of his past conduct because he was sentenced only to probation on the predicate state offenses. The record demonstrates that the District Court properly considered these arguments and rejected them, finding that the career offender designation accurately reflected the substance of Berisha's criminal history, thereby weighing in favor of a within-Guidelines sentence.

At the third stage of sentencing, when discussing the § 3553(a) factors, the District Court went into great detail regarding the concerns raised by Berisha's criminal history, observing that Berisha had 17 prior arrests and 5 convictions, noting that the seriousness of his offenses had escalated over time, and remarking that Berisha had not taken

5

advantage of prior opportunities to reform his behavior. The District Court also rejected Berisha's argument in mitigation that he had only been sentenced to probation. The Court noted that Berisha violated his probation and cited the observations of the state probation officer that Berisha "made a poor adjustment to supervision." For these reasons, the District Court's refusal to vary downward on this basis was not unreasonable.

C.

Berisha next contends that his sentence was procedurally unreasonable because the District Court failed to adequately explain his sentence, as required by *Gall v. United States*, 552 U.S. 38, 50 (2007). *See United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc) ("[I]t is equally important that district courts provide courts of appeals with an explanation 'sufficient for us to see that the particular circumstances of the case have been given meaningful consideration within the parameters of § 3553(a).'"). Berisha concedes that the District Court "did review the pertinent § 3553 factors," but he argues that the Court placed disproportionate reliance on his "overstated prior criminal history" and the need for deterrence.

Our review of the record reveals that the District Court conscientiously considered the relevant § 3553(a) factors and adequately explained its assessment of each one. In addition to its discussion of Berisha's criminal history, the Court noted the serious nature of the drug conspiracy in which Berisha was intricately involved. The Court also reviewed Berisha's personal history, including his anger management issues and struggle

with drug addiction. The Court explained why it was refusing the requests for leniency from Berisha and his family members, stating that their willingness to intervene and support Berisha could not alleviate the "serious and real risk of [Berisha] committing further crimes in the future" as shown by their failure to intervene in the past and Berisha's escalating pattern of criminal conduct. It also touched on the need to avoid unwarranted sentencing disparities, noting that Berisha's co-defendant had received a lower sentence because of differences in criminal history and relevant drug quantity. Although the Court spent relatively more time discussing Berisha's criminal history, deterrence, and the need to protect the public from further crimes, the emphasis on these factors was not unjustified because they were highly relevant under the circumstances.

In sum, the District Court's explanation of its sentence was sufficient to enable our review for procedural and substantive reasonableness, and we find both standards satisfied. *See id*. at 567. We will affirm the judgment of the District Court.