NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2781
_____

UNITED STATES OF AMERICA

v.

MARK MARCOCCIA,
                    Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 4-15-cr-00282-001)
District Judge: Honorable Matthew W. Brann
_____

Argued December 6, 2016
Before:  FISHER,* KRAUSE and MELLOY,** *Circuit Judges*.

(Filed: April 19, 2017)

Arthur D. Agnellino, Esq.
Abrams & Agnellino
120 South Keystone Avenue
Sayre, PA 18840

Joseph Joch, Esq.  **[ARGUED]**
Joch & Kirby

---

\* Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.
\*\* Honorable Michael J. Melloy, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

319 North Aurora Street
Ithaca, NY 14850
    *Counsel for Appellant*

James T. Clancy, Esq.
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

George J. Rocktashel, Esq.  **[ARGUED]**
Office of United States Attorney
240 West Third Street
Suite 316, Williamsport, PA 17701
    *Counsel for Appellee*

_____

OPINION[***]

_____

FISHER, *Circuit Judge*.

Mark Marcoccia was arrested for conspiring to distribute a controlled substance analogue. He pleaded guilty and received a sentencing enhancement for being a career offender under Section 4B1.1 of the United States Sentencing Guidelines. Arguing that the District Court erred by designating him a career offender and not substantially departing downward, he appeals the court imposed sentence and final judgment. For the reasons that follow, we will affirm.[1]

---

[***] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] At the outset, we wish to thank the Federal Public Defender for its responsiveness to the Court's request for a submission of amicus briefing in this case.

I.

For two years, Appellant Mark Marcoccia conspired with Justin Johnson to distribute a controlled substance analogue known as "bath salts," and to conceal and spend the proceeds from the sale of that illegal substance. Johnson managed the distribution of the drugs—he identified a steady source of supply for bath salts and generated revenue from internet sales of the substance. Marcoccia managed the finances—he provided cash to purchase additional quantities of bath salts, and concealed the source of the drug revenue by making structured bank deposits and several large purchases.

On December 1, 2015, Marcoccia was charged with one count of conspiracy to distribute controlled substances under 21 U.S.C. § 846. He pleaded guilty and the United States' Attorney's Office stipulated that his base offense level was fourteen with a two-point reduction for acceptance of responsibility. It noted, however, that none of these stipulations were binding on the United States Probation Office.

On March 23, 2016, the Probation Office issued its presentence investigation report ("PSR"). The PSR designated Marcoccia as a career offender based on two prior felony convictions. The first conviction was a state felony conviction for possession of methamphetamine and the second conviction was a federal felony conviction for conspiracy to possess with intent to distribute in excess of 50 grams of methamphetamine. In the state case, he was charged in 2003 and sentenced on April 8, 2004. In the federal case, he was charged in 2005 and sentenced on May 16, 2007.

As a result of the career offender enhancement, Marcoccia's sentencing range increased dramatically.[2] Accordingly, he objected to the career offender status, claiming that it should not apply to him and requested either a downward variance or a downward departure. On June 1, 2016, the District Court considered Maroccia's arguments at his sentencing hearing. First, it concluded that the career offender enhancement applied to Marcoccia under the plain text of the guidelines. Second, it stated that the guidelines range was too high, that the appropriate way to reduce Marcoccia's sentence was through a variance, and that there were no motions for departure. Third, it agreed that a variance was warranted for several reasons, including that the sentencing disparity between Marcoccia and his co-conspirator was too high. Ultimately, the District Court granted a substantial variance and entered judgment, imposing a sentence of 96 months' imprisonment followed by four years' supervised release. This appeal followed.

## II.

The District Court had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231, and this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We "exercise plenary review over a district court's interpretation of the Guidelines" and "review factual findings relevant to the Guidelines for clear error." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). We review a District

---

[2] Without it, his offense level was twelve and his criminal history category was five, resulting in a guideline range of 27-33 months. With it, his offense level was twenty nine and his criminal history category was six, resulting in a guideline range of 151-188 months.

Court's sentencing decisions for both "procedural and substantive reasonableness" applying an "abuse-of-discretion standard." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

## III.

On appeal, Marcoccia raises three primary issues. First, he argues that the District Court erred in designating him as a career offender. Second, he argues that the District Court erred in not giving him a proper downward departure. Third, he argues that his sentence was not substantively reasonable. We consider each argument, in turn, and will affirm for the reasons stated below.

## A.

Under Section 4B1.1(a) of the United States Sentencing Guidelines Manual "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is . . . a controlled substance offense; and (3) the defendant has at least two prior felony convictions of . . . a controlled substance offense." To determine whether to treat prior convictions as separate, the Guidelines state:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.

5

United States Sentencing Guidelines Manual ("U.S.S.G.") § 4A1.2(a)(2). On appeal, Marcoccia argues that the District Court improperly applied this enhancement because his two prior felonies should be treated as one conviction and because he is not the recidivist criminal that the enhancement was meant to target.

We disagree. Whether or not there was an intervening arrest in this case,[3] and whether or not Marcoccia was the recidivist felon that the career offender guideline was meant to target, because his state and federal felonies were sentenced on different days and charged in different instruments, the unambiguous text of the guidelines precludes his argument that his two prior felonies should be treated as one conviction. *See* U.S.S.G. § 4A1.2(a)(2); *United States v. Brown*, 578 F.3d 221, 227 (3d Cir. 2009) ("When construing the Guidelines, we look first to the plain language, and where that is unambiguous we need look no further.") (citation omitted); *United States v. Jones*, 698 F.3d 1048, 1050-51 (8th Cir. 2012) (rejecting argument that two prior convictions prosecuted in different jurisdictions and sentenced on different days should be considered "a single sentence because the offenses were 'inextricably intertwined'" as "[s]uch an approach would ignore the clear instruction from section 4A1.2(a)(2)."). Accordingly, because Marcoccia has two prior felony convictions, and because Marcoccia does not

___

[3] As relevant to this question, the record shows that Marcoccia's prior federal case lists a different, and much later, arrest date for the federal felony than the state felony, while also indicating that he was released and then re-arrested twice after his initial arrest for the state felony. Since the federal conspiracy charge encompassed a time period that ended after his initial state arrest, as we noted at oral argument, Marcoccia may also qualify as a career offender on the basis that his "sentences were imposed for offenses that were separated by an intervening arrest." U.S.S.G. § 4A1.2(a).

dispute that he meets the other requirements of U.S.S.G. § 4B1.1(a), the District Court properly concluded that he qualifies for the career offender enhancement under the plain text of the guidelines.

## B.

"After *Booker*, a district court must undertake a three-step process in imposing a sentence: (1) calculate the applicable Guidelines range, (2) formally rule on any departure motions, and (3) exercise its discretion in applying the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Grier*, 585 F.3d 138, 141-42 (3d Cir. 2009). Consequently, after the District Court calculates the applicable guidelines range, it "must formally rule on the motions of both parties and state on the record whether [it is] granting a departure and how that departure affects the Guidelines calculation." *United States v. Lofink*, 564 F.3d 232, 237-38 (3d Cir. 2009) (quoting *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). On appeal, Marcoccia argues that the District Court procedurally erred by failing to perform this second step and not considering the appropriateness of downward departures.

We disagree. First, this Court may "infer . . . from the District Court's actions" in this case that "[it] did use its discretion to deny the request for a downward departure, choosing instead to grant a . . . variance." *United States v. Handerhan*, 739 F.3d 114,

7

121-22 (3d Cir. 2014) (internal quotation marks omitted).[4] Under our prior cases, we lack jurisdiction to review that discretionary decision. *See Grier*, 585 F.3d at 141 ("We cannot . . . review a district court's refusal to grant a downward departure . . . unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure.") (internal quotation marks omitted); *United States v. Jackson*, 467 F.3d 834, 839 (3d Cir. 2006) ("We . . . have no authority to review discretionary denials of departure motions in calculating sentencing ranges.").

Second, the District Court went on to state that there were "no motions for departure," and, when it made that statement, Marcoccia did not object, limiting our review for plain error under Federal Rule of Criminal Procedure 52(b).[5] Under plain error review, Marcoccia must show that the District Court committed a "clear or obvious" error that "affected the appellant's substantial rights" by raising "a reasonable probability that the error affected the outcome of the proceedings." *United States v. Calabretta*, 831 F.3d 128, 132 (3d Cir. 2016). If he meets that test, he must then show that the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings" before we may exercise our discretion to remedy it. *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

---

[4] Indeed, it expressly noted: "I do agree . . . that the range calculated by the guideline is too high . . .  But I think the appropriate way to deal with that is through a variance. If I were to deal with it through a departure, I would be limited to a departure of only one criminal history category pursuant to 4A1.3(b)(3)(A)." J.A. 87.

[5] In fact, far from objecting, Marcoccia's counsel went on to expressly state: "I think the solution is exactly what the Court hinted at the beginning; the solution is a variance." J.A. 98.

8

Here, we are satisfied that even if the Court engaged in procedural error by stating that there were no requests for downward departures, that error was harmless and does not require remand for resentencing. Because the District Court's stated intention was to use its discretion to lower Marcoccia's sentence through a downward variance rather than a downward departure, we cannot say the District Court's failure to note that Marcoccia requested departures "affect[ed] the district court's selection of the sentence imposed" as is required for a non-constitutional error to require remand for resentencing. *Brown,* 578 F.3d at 226 (internal quotation marks omitted). Moreover, "[g]iven the district court's reliance on the § 3553(a) factors and the substantial discrepancy between the sentence imposed and the calculated Guidelines range," *United States v. Zabielski*, 711 F.3d 381, 388 (3d Cir. 2013), we believe this is one of those rare cases where "a district court may choose to disregard the Guidelines as too severe in such a way that we can be certain that the miscalculation had no effect on the sentence imposed." *United States v. Langford*, 516 F.3d 205, 218 (3d Cir. 2008).

## C.

Finally, Marcoccia argues that his sentence was not substantively reasonable. For substantive reasonableness, we "give[] district courts broad latitude in sentencing," *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008),[6] and the pertinent inquiry "is whether the record as a whole reflects rational and meaningful consideration of the

---

[6] *See also United States v. Schweitzer*, 454 F.3d 197, 204 (3d Cir. 2006) ("That we may ourselves have imposed a sentence different from that of the district court, based on our own de novo assessment of the evidence, is no basis to overturn the judgment.").

9

factors enumerated in 18 U.S.C. § 3553(a)." *Tomko*, 562 F.3d at 568 (internal quotation marks omitted). "[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.*

Here, we conclude that Marcoccia's 96-month sentence—which was 55-months lower than the bottom end of his properly calculated advisory guidelines range—was substantively reasonable. First, the District Court appropriately considered all the factors present in § 3553(a), including: (1) "the seriousness of the offense"; (2) the need "to afford adequate deterrence"; (3) "promot[ion of] respect for the law"; (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (5) "the history and characteristics of the defendant"; and (6) policies prescribed by the sentencing commission. 18 U.S.C. § 3553(a)(1)-(7); J.A. 104-08.

Second, "[t]he record makes clear that the sentencing judge listened to each argument" and "considered the supporting evidence,"[7] and this Court cannot find that the District Court abused its discretion in finding those arguments insufficient to warrant a lower sentence. *Rita v. United States*, 551 U.S. 338, 358 (2007). While Marcoccia may not have been directly involved in distributing drugs, the District Court did not err in finding the nature of this offense serious when he was integrally involved in this scheme

---

[7] Indeed, the District Court agreed with many of Marcoccia's arguments when it decided to grant a substantial downward variance. J.A. 105-08.

for two years, funded drug purchases, and made a series of structured deposits to conceal the drug proceeds. Likewise, while there is a disparity among the sentences in this case, it was not an abuse of discretion for the District Court to conclude that the disparity that ultimately resulted was warranted based on Marcoccia's career offender status and five prior convictions—four of which related to the possession, distribution, and manufacture of methamphetamines.[8]

Finally, the District Court did not ignore Marcoccia's arguments that the career offender enhancement had a draconian effect on his sentence—instead it granted a substantial variance to ensure that Marcoccia's sentence appropriately balanced the considerations specified in 18 U.S.C. § 3553(a). Where we could have applied a presumption of reasonableness had the District Court handed down a much higher sentence that fell within his Guidelines range, *see Rita*, 551 U.S. at 347, Marcoccia simply has not met his burden to demonstrate that the District Court acted unreasonably by imposing only a 55-month downward variance.

---

[8] On this issue, we note that the District Court incorrectly stated that "[i]f Mr. Marcoccia had not been designated a career offender, he would have . . . an offense level of 29 and range of imprisonment of between 140 and 175 months." J.A. 106. Marcoccia, has never claimed this was an error, but we are satisfied that, even were we to rule that this statement constitutes procedural error, it was harmless. The record shows that the District Court did not rely on that range to assess what sentence was appropriate—it merely mentioned it to support its point that "there must be some disparity between the two co-conspirators, as clearly Mr. Marcoccia has a greater criminal history with or without the career offender status." J.A. 106. In addition, given the substantial downward variance and the District Court's agreement that Marcoccia's guideline range was too high, we believe this to be one of those cases where "a district court may choose to disregard the Guidelines as too severe in such a way that we can be certain that the miscalculation had no effect on the sentence imposed." *Langford*, 516 F.3d at 218.

11

## IV.

For the reasons set forth above, we will affirm.

*United States v. Marcoccia*, No. 16-2781
KRAUSE, *Circuit Judge*, concurring in the judgment.

I fully agree with the Majority that the District Court properly imposed the career offender enhancement in this case, given the directive of U.S.S.G. § 4A1.2(a)(2) that prior sentences be counted as separate unless there was no intervening arrest and "the sentences resulted from offenses contained in the same charging instrument[,] or . . . were imposed on the same day." Here, as the Majority notes, the record reflects that Appellant did have an intervening arrest between his two convictions and thus appears to qualify as a career offender on that ground alone. Maj. Op. 6 n.3. But, as the Majority also explains as its primary ground for affirming, even if Appellant's sentences were not separated by an intervening arrest, the plain language of § 4A1.2(a)(2) provides that state and federal sentences are counted separately when they result from convictions charged in separate indictments and sentenced on separate days—even when those convictions are based on the very same conduct that happened to be charged by separate sovereigns. Maj. Op. 6. I write separately to highlight the concerns raised by the application of § 4A1.2(a)(2) in that situation—an application that may not have been specifically intended by the Sentencing Commission and that creates significant tension with other aspects of the Guidelines.

1

By way of background, while the plain text of § 4A1.2(a)(2) now provides—as acknowledged even by Amicus from whom we invited briefing[1]—that state and federal sentences arising from the same criminal conduct count as separate convictions towards career offender status, that was not always so. Prior to the November 2007 Amendment to the Guidelines, such sentences would have been counted as a single sentence because they would have been deemed "related" sentences, i.e., sentences that, with no intervening arrest, "resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2 comment. n.3 (2006). But such determinations ultimately proved "too complex" and confusing, causing "a significant amount of litigation . . . concerning application of the rules," and "circuit conflicts . . . over the meaning of terms in the commentary that define when prior sentences may be considered 'related.'"[2] U.S.S.G. Supp. to App. C, Amend. 709, at 238 (Nov. 2007). Thus, in 2007, the Commission amended the Guidelines to eliminate the "related" sentencing provision and to instruct that all prior sentences are considered separate unless there was no intervening arrest and "the sentences resulted from offenses contained in the same charging instrument[,] or . . . were imposed on the same day." U.S.S.G. § 4A1.2(a)(2) (2007).

---

[1] *See* Amicus Letter Br. 3. I join the Majority in extending sincere gratitude to Assistant Federal Public Defender Ronald A. Krauss, who, in a tight timeframe, submitted a thoughtful and helpful response to the Court's request for assistance.

[2]For example, there was circuit tension over whether, to consider prior convictions that were consolidated for sentencing as "related," courts should require that the record include a formal order of consolidation, *see, e.g.*, *United States v. Correa*, 114 F.3d 314, 317 (1st Cir. 1997), or not, *see, e.g.*, *United States v. Huskey*, 137 F.3d 283, 288 (5th Cir. 1998).

The purpose of this Amendment, as explained by the Commission, was to "simplif[y] the rules for counting multiple prior sentences and promot[e] consistency in the application of the guideline." U.S.S.G. Supp. to App. C, Amend. 709, at 238. And simplify, it did. But, in so doing, it also may have swept within its ambit certain sentences that the Commission did not specifically consider and, on reflection, would not treat as separate sentences. That is, neither the Amendment nor the Comments to the Amendment reflect that the Commission expressly considered that where the same misconduct happens to be charged by both state and federal authorities, it typically will be charged in different instruments and sentenced on different days; in other words, in that circumstance and absent an intervening arrest, the same criminal act invariably will be counted under § 4A1.2(a)(2), as amended, as two separate sentences for purposes of computing § 4B1.1's career offender enhancement.

Given the profound increase in sentence that follows from that enhancement, this result is a troubling one, and to the extent the Commission did not consider how § 4A1.2(a)(2) would apply in this circumstance, it may wish to do so for three reasons.

*First*, counting these sentences separately appears to conflict with Congress's mandate that the Commission "provid[e] certainty and fairness in meeting the purposes of sentencing, [and] avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct." 28 U.S.C. § 991(b)(1)(B). It is also in tension with the Commission's own Policy Statement that it will seek "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders" and

3

"proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity." U.S.S.G. § 1A1.1, p.s.

True, those goals may be achieved to some extent through departures in a typical case, but in career offender cases, the Guidelines limit departure to a single criminal history category and thus can have only a small effect on the sentence. *See* U.S.S.G. § 4A1.3(b)(3)(A). True, too, that district courts also have discretion to grant variances when a case falls "outside the heartland to which the Commission intends individual Guidelines to apply," *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal quotation marks and citation omitted), and they do not abuse their discretion when they grant a variance, as the District Court did here, based on a determination that a sentence is "greater than necessary in light of the purposes set forth in § 3553(a)," *id*. at 110 (internal quotation marks omitted). But, again, the availability of a variance is no panacea, for the Guidelines remain "in a real sense the basis for the sentence," *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (emphasis omitted), and sentencing courts must still look to them as "the starting point and the initial benchmark," *Gall v. United States*, 552 U.S. 38, 49 (2007).

Unquestionably, and with dramatic effect, the determination "whether or not a defendant is designated a career offender . . . will shift the 'benchmark' or 'framework' of the district court's sentencing determination by changing the recommended sentencing range." *United States v. Calabretta*, 831 F.3d 128, 135 (3d Cir. 2016). And when that benchmark or framework is shifted by catapulting to career offender status a defendant who previously engaged in the very same conduct as others, but happens to have been

4

charged and sentenced for that conduct by both federal and state authorities, the consequences for the defendant being sentenced are palpable, with the Guidelines contributing to the very harm they are meant to prevent—disproportionality and disparity in sentencing.[3]

*Second*, it is not apparent how the goal of the career offender enhancement is served by counting as separate sentences a federal and a state sentence that stem from the same criminal conduct. The career offender enhancement was meant to address recidivism, with Congress directing the Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for defendants who, at the time of sentencing, "ha[ve] previously been convicted of two or more prior felonies." 28 U.S.C. § 994(h). The Commission responded with § 4B1.1, imposing a significant career offender enhancement on three-strike defendants and explicitly focusing on "the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate," U.S.S.G. § 4B1.1 comment. background, and whose "[r]epeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation," U.S.S.G. Ch.4, Pt.A, intro. comment. But where two of those three strikes arise from the very same criminal conduct, application of the enhancement does not accurately reflect Congress's or the Commission's considered decision to impose a

---

[3] As Amicus astutely observes, the Department of Justice's *Petite* policy, which generally advises against a federal prosecution for the same acts already prosecuted at the state level is likewise insufficient to dispel these concerns as, in some cases, the federal sentence will be imposed before the state sentence, and, in any event, "the Government has reserved the right to apply or not apply its 'policy' in its discretion." *Petite v. United States*, 361 U.S. 529, 533 (1960) (Brennan J., concurring).

5

sentence at or near the maximum authorized only on those offenders who have engaged in three or more felonies.  Instead, it allows the draconian effect of § 4B1.1 to reach even two-time offenders, in effect, redefining career offender status.

*Third*, treating these sentences as separate also has implications for the reality and the appearance of fundamental fairness in sentencing.  While an offender "has no substantive right to a particular sentence," the Supreme Court has recognized that the "procedure which leads to the imposition of sentence" does implicate due process concerns.  *Gardner v. Florida*, 430 U.S. 349, 358 (1977); *see Townsend v. Burke*, 334 U.S. 736, 741 (1948) (recognizing due process concerns inherent in sentencing based on false criminal history).  And those concerns are triggered where the serendipity of two sovereigns charging and sentencing the same conduct on different days results in the mandatory application of the career offender enhancement under the Guidelines, which then serve as the "benchmark" and "framework" for sentencing.  *Gall*, 552 U.S. at 49; *Calabretta* 831 F.3d at 135.  Marcoccia, absent his intervening arrest, would have presented a case in point:  Without the enhancement, his Guidelines range would have been 27 to 33 months' imprisonment (based on an offense level of twelve and a Criminal History Category of V) *see* Maj. Op. 4 n.2; with it, his range was 151 to 188 months' imprisonment (based on an offense level of twenty-nine and a Criminal History Category of VI), *see* J.A. 87.

With the frequency of joint and parallel federal-state investigations,[4] there are sure to be future cases that will present the issue squarely and will require sentencing courts to consider carefully the effect of § 4A1.2(a)(2) and the extent of any variance that may be appropriate to ensure the sentence imposed reflects the considerations specified in 18 U.S.C. § 3553(a) and avoids disproportionality and unwarranted disparity in sentencing. Accordingly, if the Sentencing Commission did not intend the 2007 Amendment to § 4A1.2(a)(2) to cover this situation, I urge it to provide further guidance at the earliest opportunity.

---

[4] *See, e.g.*, Office of Nat'l Drug Control Policy, Exec. Office of the President, Nat'l Drug Control Strategy 37 (2016) (explaining that "[m]ulti-jurisdictional task force teams that implement strategies to pool resources and share information are the backbone of counterdrug enforcement efforts").