**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3969
_____

UNITED STATES OF AMERICA

v.

MICHAEL CALABRETTA,
a/k/a Michael Callabretta

Michael Calabretta,
                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2-12-cr-00131-001)
District Judge:  Hon. Stanley R. Chesler

Argued:  September 15, 2015
_____

Before:  FISHER, CHAGARES, and JORDAN, <u>Circuit
Judges</u>

(Filed July 26, 2016)

John C. Meringolo [ARGUED]
Meringolo & Associates
375 Greenwich Street, 7th Floor
New York, NY 10013
          <u>Attorney for Appellant</u>

Steven G. Sanders [ARGUED]
Mark E. Coyne
Office of United States Attorney
970 Broad Street
Newark, NJ 07102
    Attorneys for Appellee

_____

OPINION

_____

CHAGARES, Circuit Judge.

At issue in this appeal is whether Michael Calabretta's prior state conviction for eluding in the second degree qualifies as a "crime of violence" under the advisory United States Sentencing Guidelines (the "Guidelines," or "U.S.S.G."). In light of Johnson v. United States, 135 S. Ct. 2551 (2015), we hold that the District Court plainly erred in considering the state conviction to be a "crime of violence" under the Guidelines. We will vacate Calabretta's sentence and remand for resentencing.

I.

On March 15, 2013, Calabretta pleaded guilty to a two-count superseding information, charging him with conspiracy to distribute and possess with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, and with conspiracy to launder the proceeds of drug trafficking activity, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h). Calabretta was subject to a five-year mandatory minimum sentence pursuant to the stipulated charges in the plea agreement.

In advance of sentencing, the parties and the District Court received a copy of the Presentence Report (the "PSR"), which included Calabretta's Criminal History Category and Total Offense Level. The PSR considered multiple prior state convictions in calculating Calabretta's Criminal History Category, including a 1990 conviction for "Death by Auto"

and a 1994 conviction for "Eluding in the Second Degree." The PSR also considered those two convictions to constitute "crimes of violence" pursuant to U.S.S.G. § 4B1.2, and accordingly designated Calabretta as a "career offender" under the Guidelines.[1] Application of the career offender Guideline increased Calabretta's Criminal History Category from III to VI, and increased his Total Offense Level from 29 to 31. With the career offender Guideline, Calabretta's recommended Guidelines sentencing range was 188 to 235 months of imprisonment. Had the career offender Guideline not applied, his recommended Guidelines sentencing range would have been 108 to 135 months.

At sentencing, the District Court adopted the PSR's calculation of Criminal History Category VI and Total Offense Level of 31, which included the application of the career offender Guideline. After considering the sentencing factors set forth in 18 U.S.C. § 3553(a) ("section 3553(a)"), the District Court imposed a sentence of 120 months on each count to be served concurrently. Calabretta's sentence thus reflected a 68-month downward variance from the advisory Guidelines sentencing range.

In imposing Calabretta's sentence, the District Court extensively discussed Calabretta's earlier criminal convictions. The District Court noted that Calabretta became "involved in this particular scheme approximately five years after he was released from jail on his prior convictions and . . . [he] should have learned [his] lesson." Appendix ("App.") 141. The District Court also indicated that "a very substantial sentence is required," in part, to "get through to [Calabretta]

---

[1] Under U.S.S.G. § 4B1.1(a), a defendant is a career offender if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The District Court adopted the PSR's finding that all three prongs of the career offender Guideline were met.

3

that if [he] thought [he] had reformed, reforming by becoming a drug dealer is not reforming." App. 142. Additionally, the District Court denied Calabretta's request for a two-level reduction in his offense level, in anticipation of an amendment to the Guidelines. The District Court noted that Calabretta would be ineligible for a sentencing reduction under the amendment "given [his] prior criminal record." App. 132.

On September 11, 2014, the District Court entered the final judgment of conviction and sentence, which reflected the 120-month term of imprisonment imposed. Calabretta timely appealed.

II.[2]

At his sentencing, Calabretta did not challenge whether his state conviction for eluding in the second degree is a "crime of violence," so we will review the District Court's determination of that issue for plain error. To establish plain error, Calabretta must show that (1) the District Court erred; (2) the error was clear or obvious, rather than subject to reasonable dispute; and (3) the error affected the appellant's substantial rights, which in the ordinary course means that there is a reasonable probability that the error affected the outcome of the proceedings. United States v. Marcus, 560 U.S. 258, 262 (2010); United States v. Tai, 750 F.3d 309, 313-14 (3d Cir. 2014). If all three elements are established, then the Court may exercise its discretion to award relief. See United States v. Olano, 507 U.S. 725, 736 (1993). That discretion should be exercised only in cases where the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (quotation marks omitted); see also United States v. Stinson, 734 F.3d 180, 184 (3d Cir. 2013).

III.

_____

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Calabretta argues that the District Court plainly erred in treating his conviction for eluding as a "crime of violence" under the Sentencing Guidelines, and that his case should be remanded for resentencing.[3] The Guidelines define a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>
> 1. has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> 2. is burglary of a dwelling, arson, or extortion, involves use of explosives, or <u>otherwise involves conduct that presents a serious potential risk of physical injury to another</u>.

U.S.S.G. § 4B1.2(a) (emphasis added). The Government has conceded that Calabretta's eluding conviction qualifies as a "crime of violence" only under what is known as the "residual clause" of the Guideline — as "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another."[4] <u>See</u> Gov't Letter Pursuant to Fed. R. App. P. 28(j) (Aug. 12, 2015).

---

[3] Calabretta raised a number of other issues on appeal. We will not consider those here, as our determination that the District Court committed plain error when it considered Calabretta's eluding conviction as a "crime of violence" is dispositive of his appeal.

[4] In New Jersey, eluding in the second degree is defined as follows: "Any person, while operating a motor vehicle on any street or highway in this State or any vessel . . . who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle or vessel to a full stop commits a crime of the third degree; <u>except that, a person is guilty of a crime of the second degree if the flight or attempt</u>

5

A.

While Calabretta's appeal was pending, the United States Supreme Court decided <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), which held that an identically worded residual clause in the Armed Career Criminal Act ("ACCA") was unconstitutional. Under ACCA, defendants are subject to a more severe punishment if they have three or more previous convictions for a "violent felony" — which included, under the statute's residual clause, "conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Supreme Court precedent prior to <u>Johnson</u> had required courts to use a "categorical" approach to determine whether a crime fell within ACCA's residual clause. See <u>Sykes v. United States</u>, 564 U.S. 1 (2011); <u>James v. United States</u>, 550 U.S. 192 (2007). The categorical approach prescribed that courts "picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." <u>Johnson</u>, 135 S. Ct. at 2557 (quoting <u>James v. United States</u>, 550 U.S. 192, 208 (2007)).

But in <u>Johnson</u>, the Supreme Court overruled its earlier cases — <u>Sykes</u> and <u>James</u> — that required courts to use the categorical approach to determine whether a crime was included in ACCA's residual clause. Rather, the Supreme Court invalidated, as unconstitutionally vague, ACCA's residual clause. The Supreme Court held that defendants were denied due process of law when their sentences were increased after application of ACCA's residual clause because the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." <u>Johnson</u>, 135 S. Ct. at 2557. The Court ruled that the indeterminacy inherent in both inquiries under the categorical approach — (1) imagining the conduct in "the ordinary case" of a crime, and (2) imagining the "serious potential risk" of that "ordinary case" — was, at least in combination,

---

to elude creates a risk of death or injury to any person." N.J. Stat. Ann. § 2C:29-2(b) (emphasis added).

6

unconstitutionally vague.[5]  Id. at 2557-58.  The Court also noted the practical results of prior jurisprudence interpreting the residual clause:  numerous splits among the federal courts regarding the type of inquiry for determining what a crime is in "the ordinary case," and ultimately, which crimes fall within the residual clause.  Id. at 2560.  Therefore, the Supreme Court held that "[i]nvoking so shapeless a provision to condemn someone to prison . . . does not comport with the Constitution's guarantee of due process."  Id.

B.

Under the plain error standard, we must first consider whether the District Court committed an error when it considered the eluding conviction as a "crime of violence" in determining Calabretta to be a career offender under the Guidelines.  Both the Government and Calabretta argue that, under Johnson, the identically worded "residual clause" of § 4B1.2 of the Guidelines is likewise invalid.  This question, however, is one for the courts — not the parties — to decide. "Confessions of error . . . do not relieve this Court of the performance of the judicial function. . . . [O]ur judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties."  Sibron v. New York, 392 U.S. 40, 58 (1968) (quotation marks and citations omitted).

---

[5] Justice Antonin Scalia, writing for the Johnson majority, indicated the various methods a court could use (and, indeed, had employed) under the categorical approach:  "How does one go about deciding what kind of conduct the 'ordinary case' of a crime involves?  'A statistical analysis of the state reporter?  A survey?  Expert evidence?  Google?  Gut instinct?'"  Id. at 2557.  "The residual clause offers no reliable way to choose between . . . competing accounts of what [the] 'ordinary' [crime] involves."  Id. at 2558.  Further, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony.  It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction."  Id.

We hold that the "residual clause" in § 4B1.2 of the Guidelines is unconstitutionally vague.[6]  This holding flows

---

[6] The courts of appeals are split on this question.  Compare United States v. Madrid, 805 F.3d 1204, 1210-11 (10th Cir. 2015) (holding that the residual clause in § 4B1.2(a)(2) is unconstitutionally vague), with United States v. Matchett, 802 F.3d 1185, 1193-96 (11th Cir. 2015) (declining to apply vagueness principles to the advisory Guidelines, and holding § 4B1.2(a)(2) to be constitutional).  See also United States v. Pawlak, 822 F.3d 902, 911 (6th Cir. 2016) (holding that the residual clause of § 4B1.2(a) is unconstitutionally vague); United States v. Welch, __ F. App'x __, 2016 WL 536656, at *4 (2d Cir. 2016) (summary order) (same).  The Court of Appeals for the Seventh Circuit has also indicated in dictum that § 4B1.2(a)(2) may be unconstitutionally vague.  Ramirez v. United States, 799 F.3d 845, 856 (7th Cir. 2015) ("In Johnson v. United States, the Supreme Court held that the identically worded residual clause of the Armed Career Criminal Act is unconstitutionally vague.  We have interpreted both residual clauses identically, and so we proceed on the assumption that the Supreme Court's reasoning applies to section 4B1.2 as well.  This is a point, however, that neither side has briefed, and it may warrant attention on remand." (citations omitted)).  Finally, it is worth noting that the Court of Appeals for the Eighth Circuit has issued two divided panel opinions on this issue.  In United States v. Taylor, 803 F.3d 931 (8th Cir. 2015), the court vacated the defendant's sentence and remanded for resentencing.  The court acknowledged that although there was circuit precedent holding that the Guidelines were not susceptible to a vagueness attack, that holding was called into question by Johnson.  The court left the question to be decided in the first instance by the district court.  Id. at 933.  However, a later panel of that court found that any such sentencing error was not "obvious" or "plain" in light of the circuit precedent holding that advisory Guidelines could not be void for vagueness.  See United States v. Ellis, 815 F.3d 419, 421 (8th Cir. 2016).  The United States Supreme Court has recently granted a petition for writ of certiorari on this question that has divided the courts of appeals.  See United States v. Beckles, 616 F. App'x 415 (11th Cir. 2015), cert.

from our prior case law wherein we have interpreted the "crime of violence" definition in the Guidelines identically to the "violent felony" definition in ACCA.[7] For example, in United States v. Hopkins, 577 F.3d 507 (3d Cir. 2009), we considered whether a second degree misdemeanor escape offense under Pennsylvania law qualified as a crime of violence under the residual clause of section 4B1.2. The case was remanded to us by the Supreme Court to be considered further in light of Chambers v. United States, 555 U.S. 122 (2009), an ACCA decision dealing with whether the offense of failing to report for incarceration was a violent felony. See Hopkins v. United States, 555 U.S. 1132 (2009). We applied Chambers and held that while the Supreme Court in that decision "was not called upon to construe the career offender provision of the Sentencing Guidelines, the definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence under the Sentencing Guidelines that authority interpreting one is generally applied to the other." 577 F.3d at 511 (footnote omitted). In addition, we observed that the validity of our holding was "demonstrated by the Supreme Court's remand order in this case." Id.

More recently, in United States v. Marrero, 743 F.3d 389 (3d Cir. 2014), we considered whether a simple assault

---

granted, 2016 WL 1029080 (U.S. June 27, 2016) (No. 15-8544).

[7] The Sentencing Commission has also recognized the connection of the Guidelines residual clause to that of ACCA. The Sentencing Commission has indicated that the "crime of violence" definition in § 4B1.2 is "derived from 18 U.S.C. § 924(e)." See U.S.S.G. app. C, amend. 268 (eff. Nov. 1, 1989). And as of January 2016, the Sentencing Commission has proposed an amendment that would eliminate the residual clause of § 4B1.2. The amendment will go into effect on August 1, 2016, unless Congress acts to the contrary. See U.S. Sentencing Commission, Amendment to the Sentencing Guidelines, at 2 (Jan. 21, 2016), http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20160121_RF.pdf.

was a crime of violence under the Guidelines residual clause of section 4B1.2. Notably, the case was back before a panel of our Court after being remanded by the Supreme Court in light of its decision in Descamps v. United States, 133 S. Ct. 2276 (2013) — a decision, like Chambers, involving application of the identical "violent felony" provision of ACCA. See Marrero v. United States, 133 S. Ct. 2732 (2013). Our analysis relied upon numerous cases decided under ACCA. 743 F.3d at 394-401. We held that although those cases "involved sentencing enhancements under [ACCA] rather than the career offender Guideline, they nevertheless bind our analysis." Id. at 394 n.2 (emphasis added). We explained that "'[p]recedent . . . requires the application of case law interpreting "violent felony" in ACCA to "crime of violence" in U.S.S.G. 4B1.2[] because of the substantial similarity of the two sections.'" Id. (quoting United States v. Herrick, 545 F.3d 53, 58 (1st Cir. 2008)).

This approach of similarly interpreting the two residual clauses remains appropriate for the case before us now. Prior to Johnson, courts in this circuit were instructed to use the same categorical approach under both residual clauses for determining whether a conviction qualifies as a crime of violence — that is, "whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." Marrero, 743 F.3d at 395 (quotation marks and emphasis omitted). But in Johnson, the Supreme Court held that the indeterminacy inherent in the categorical approach, under ACCA, denied defendants due process by "den[ying] fair notice to defendants" and "invit[ing] arbitrary enforcement by judges." 135 S. Ct. at 2557.

It is apparent that if ACCA's residual clause "invites arbitrary enforcement," id., so does the residual clause in § 4B1.2. The process by which a sentencing court determines whether a prior conviction is a "crime of violence" is the same process that the Supreme Court held to be fraught with indeterminacy under ACCA. And the result of this indeterminate process — whether or not a defendant is designated a career offender under § 4B1.2 — will shift the "benchmark" or "framework" of the district court's sentencing determination by changing the recommended

10

sentencing range. See Peugh v. United, 133 S. Ct. 2072, 2083 (2013) (indicating that the advisory Guidelines serve as a "framework" for "anchor[ing]" sentencing decisions with the purpose of achieving "uniformity" in sentencing); Gall v. United States, 552 U.S. 38, 49 (2007) (indicating that the Guidelines, although advisory, "should be the starting point and the initial benchmark" in order to "secure nationwide consistency" in sentences imposed). See also Pawlak, 822 F.3d at 906 ("Peugh reflects the Court's judgment that the Guidelines are subject to constitutional challenges because the Guidelines are the mandatory starting point for sentencing determinations and district courts can be reversed for failing to correctly apply them despite the judges' discretion to deviate from the recommended range. The Supreme Court's reasoning in Peugh rests on the very same principles of fair notice and avoiding arbitrary enforcement underlying the doctrine of due process.") (citations omitted). See generally 28 U.S.C. § 994(f) ("The Commission, in promulgating guidelines . . . shall promote the purposes set forth . . . with particular attention to the requirements . . . for providing certainty and fairness in sentencing and reducing unwarranted sentence disparities."). This takes us back to first principles in sentencing, under which we require that courts calculate a defendant's Guidelines range as the first step in any sentencing, prior to application of the sentencing factors set out at 18 U.S.C. § 3553(a). United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006). "[W]hen the starting point for the § 3553(a) analysis is incorrect, the end point, i.e., the resulting sentence can rarely be shown to be unaffected." United States v. Langford, 516 F.3d 205, 217 (3d Cir. 2008). Thus, a defendant's recommended sentence (and ultimate sentence imposed) will likely be affected by how the sentencing court determines whether a prior conviction, viewed only in the abstract and not with reference to real-world facts, is a "crime of violence" under the § 4B1.2 residual clause.

Our holding also flows from our prior case law that considered constitutional vagueness challenges to the Guidelines. For example, in United States v. Maurer, 639 F.3d 72, 78 n.4 (3d Cir. 2011), we held that U.S.S.G. § 2G2.2(b)(4) was not unconstitutionally vague because it gave "a person of ordinary intelligence fair notice of the conduct to which it applies" and did not "authorize or encourage

11

arbitrary and discriminatory enforcement." <u>See also</u> <u>United States v. Jones</u>, 979 F.2d 317, 319-20 (3d Cir. 1992) (holding that U.S.S.G § 2D1.1(c)(6) is not void for vagueness), <u>superseded by Guideline on other grounds</u>, U.S.S.G. app. C, amend. 487 (eff. Nov. 1, 1993), <u>as recognized in United States v. Roberson</u>, 194 F.3d 408, 417 (3d Cir. 1999). Our case law is supported by the Supreme Court's recognition that the Guidelines are sufficiently law-like to be subject to certain limits imposed by the Constitution. <u>See, e.g.</u>, <u>Peugh</u>, 133 S. Ct. at 2082 (holding that erroneously applying amended Guidelines that are advisory but still increase a defendant's recommended sentence violates the Ex Post Facto Clause, as the "change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes" (quotation marks omitted)). <u>See also</u> <u>United States v. Savani</u>, 733 F.3d 56, 66 (3d Cir. 2013) (holding that the rule of lenity applies to the Guidelines).

We note, however, that the Court of Appeals for the Eleventh Circuit has declined to apply the vagueness doctrine to the advisory Guidelines. <u>See</u> <u>United States v. Matchett</u>, 802 F.3d 1185, 1194-95 (11th Cir. 2015) (holding that the § 4B1.2 residual clause was not invalid after <u>Johnson</u>). But the court in <u>Matchett</u> focused only on whether the advisory Guidelines could deny fair notice to a criminal defendant, and not whether a criminal defendant is protected against arbitrary enforcement in an advisory Guidelines sentencing system. <u>See</u> <u>id.</u> at 1194. We conclude, for the reasons previously discussed, that regardless of whether defendants are entitled to "fair notice" under an advisory Guidelines system,[8] the due

_____

[8] The <u>Matchett</u> court premised its holding that the "vagueness doctrine, which rests on a lack of notice, does not apply to advisory guidelines" on <u>Irizarry v. United States</u>, 553 U.S. 708 (2008). <u>Matchett</u>, 802 F.3d at 1194 (quotation marks, alterations, and citation omitted). But the conclusion in <u>Matchett</u> that criminal defendants are never entitled to fair notice under an advisory Guidelines system does not necessarily flow from <u>Irizarry</u>. Under <u>Irizarry</u>, defendants do not have a due process right over any expectation to be sentenced within the advisory Guidelines range, when a district court, after considering the sentencing factors outlined in 18 U.S.C. § 3553(a), applies a discretionary variance and

process concerns over arbitrary enforcement are implicated here. See United States v. Madrid, 805 F.3d 1204, 1210-11 (10th Cir. 2015) ("If one iteration of the clause is unconstitutionally vague, so too is the other. . . . Because the Guidelines are the beginning of all sentencing determinations, and in light of the unavoidable uncertainty and arbitrariness of adjudication under the residual clause, we hold that the residual clause of § 4B1.2(a)(2) is void for vagueness." (quotation marks and citation omitted)).

The Supreme Court's decision in Johnson supports our conclusion. In its discussion of arbitrary enforcement, the Supreme Court cited to cases involving the § 4B1.2 residual clause to demonstrate that ACCA's residual clause is "nearly impossible to apply consistently." See Johnson, 135 S. Ct. at 2560 (citing United States v. Carthorne, 726 F.3d 503 (4th Cir. 2013); United States v. Whitson, 597 F.3d 1218 (11th Cir. 2010) (per curiam); United States v. McDonald, 592 F.3d 808 (7th Cir. 2010); United States v. Williams, 559 F.3d 1143 (10th Cir. 2009)). In addition, the Supreme Court vacated the sentences of some offenders who were sentenced under the residual clause of the Sentencing Guidelines, and remanded to the courts of appeals for further consideration in light of Johnson. See United States v. Maldonado, 581 F. App'x 19 (2d Cir. 2014), vacated, 135 S. Ct. 2929 (2015); Beckles v. United States, 579 F. App'x 833 (11th Cir. 2014), vacated, 135 S. Ct. 2928 (2015). As noted earlier, this type of Supreme Court action is significant. See Hopkins, 577 F.3d at 511.

imposes a sentence outside of the recommended range. 553 U.S. at 713. At issue in the case before us is not a district court's discretionary variance. We are instead concerned with the imposition of a sentence where a criminal defendant has been incorrectly designated a career offender as a matter of law — a question over which we exercise de novo review. See United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). However, as we hold that the due process concerns over arbitrary enforcement are implicated here, we need not decide whether the residual clause of section 4B1.2 also denied Calabretta fair notice.

13

We hold that the residual clause of the career offender Guideline, like ACCA's residual clause, is infected with "hopeless indeterminacy," Johnson, 135 S. Ct. at 2558, and is unconstitutionally vague in light of Johnson.[9] Therefore, we conclude that the District Court erred in determining that Calabretta was a career offender.[10]

C.

---

[9] In reaching this holding, we do not address the continued viability of other, similar residual clauses present in other statutes. In particular, we emphasize that the residual clause of ACCA and the career offender Guideline are not only identical in their wording but are also linked to a list of four enumerated offenses (preceding the residual clauses) that qualify as crimes of violence: burglary, arson, extortion, and crimes involving the use of explosives. See 18 U.S.C. § 924(e)(2)(B); U.S.S.G. § 4B1.2(a) (limiting enumerated "burglary" offense to "burglary of a dwelling"). In Johnson, the Supreme Court indicated that ACCA's "confusing list of examples" may have contributed to that residual clause's arbitrariness and unpredictability. 135 S. Ct. at 2561. The language at issue here is the same in that regard. Thus, we need not consider — and so leave for another day — whether a similar residual clause without an exemplary list of offenses would be subject to the same degree of due process concern that the Supreme Court identified in Johnson.

[10] While the Supreme Court recently held in Welch v. United States that Johnson announced a substantive rule that applies retroactively to cases on collateral review, 136 S. Ct. 1257 (2016), we need not consider whether the residual clause of the career offender enhancement likewise involves a substantive rule of law requiring its retroactive application on collateral review. Calabretta's direct appeal was already pending at the time of the Johnson decision. See Griffith v. Kentucky, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . .").

Second, the error here is plain. An error that is plain is "clear or obvious, rather than subject to reasonable dispute," Puckett v. United States, 556 U.S. 129, 135 (2009) (citing Olano, 507 U.S. at 734), at the time of appellate consideration, see Henderson v. United States, 133 S. Ct. 1121, 1130-31 (2013). Although our Court has not ruled on the precise question as to whether the residual clause of section 4B1.2 is void for vagueness,[11] we have previously entertained similar challenges, see Maurer, 639 F.3d at 78 n.4, and we have held that Supreme Court cases construing ACCA "bind our analysis" of the career offender Guideline, Marrero, 743 F.3d at 394 n.2. Therefore, as Johnson was decided while Calabretta's appeal was pending, and as our Court has consistently construed the career offender Guideline similarly to ACCA, the error here is plain.[12]

D.

Third, the error affected Calabretta's substantial rights. "[T]o have affected a defendant's substantial rights, a plain error must have caused the defendant prejudice, in that it 'affected the outcome of the district court proceedings.'" United States v. Tann, 577 F.3d 533, 538 (3d Cir. 2009) (quoting Olano, 507 U.S. at 734). The Supreme Court recently held that "[w]hen a defendant is sentenced under an incorrect Guidelines range — whether or not the defendant's ultimate sentence falls within the correct range — the error

---

[11] Our Court need not have previously ruled on a precise issue for an error to be plain. See, e.g., United States v. Tann, 577 F.3d 533, 537 (3d Cir. 2009) (holding error to be "plain" in a matter of first impression where prior cases "deal[t] with analogous statutes"). Nor does it change our analysis that the Eleventh Circuit Court of Appeals has held differently. Our circuit precedent is sufficiently clear such that the error is plain.

[12] We also note that, unlike other courts of appeals that have found no plain error in cases arising out of similar facts, see Ellis, 815 F.3d at 421-22, our Court has never held that the advisory Guidelines were not susceptible to a vagueness attack.

15

can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016). The Government, however, "remains free to point to parts of the record — including relevant statements by the judge — to counter any ostensible showing of prejudice the defendant may make." Id. at 1347 (quotation marks and alterations omitted). Accordingly, "in the ordinary case a defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder. Absent unusual circumstances, he will not be required to show more." Id.

Despite conceding that Calabretta is no longer a career offender, the Government maintains that the error did not affect Calabretta's substantial rights. The Government points to the District Court's downward variance and the District Court's explanation that "'a sentence of 120 months . . . is the minimum sentence sufficient to secure the purposes of sentencing that are set forth in [section] 3553'" as indications that the District Court would have imposed the same sentence irrespective of the Guidelines range. See Gov't Letter Pursuant to Fed. R. App. P. 28(j) (July 28, 2015) (quoting App. 143). We disagree with the Government's contentions. The record in this case does not "show . . . that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range." Molina-Martinez, 136 S. Ct. at 1346.

There are indications in the record that the application of the career offender enhancement did affect Calabretta's sentence. The District Court placed significant emphasis on Calabretta's criminal history and his lack of "reform." App. 141-43. The sentencing court noted that Calabretta was "not a stranger to the criminal justice system," that he "should have learned [his] lesson" from his prior convictions, and that his eluding conviction, in particular, "compounded" his lack of reform. App. 141. After focusing on Calabretta's prior convictions, the District Court indicated its belief that "a very substantial sentence is required," in part, "to get through to [Calabretta] that if [he] thought [he] had reformed, reforming by becoming a drug dealer is not reforming." App. 142. We do not think any of those observations inapt, but we cannot

16

divine whether the District Court would have placed such emphasis on Calabretta's criminal history and his eluding conviction, had he not been designated a career offender convicted of multiple, prior "crimes of violence."

Additionally, the District Court denied Calabretta's request for a two-level reduction in his offense level based on anticipated amendments to the Guidelines that lowered the offense level for certain narcotics offenses.[13] In denying Calabretta's request, the District Court noted that Calabretta, as a career offender, would be ineligible for a sentence reduction under the amended Guidelines. App. 131-32. We cannot intuit whether the District Court would have granted the request if Calabretta were not a career offender, but we note that the District Court did grant such a request for two of Calabretta's co-defendants who were not designated career offenders with no objection from the Government.[14] See Gov't Br. at 9 n.6. And had the District Court granted the reduction, Calabretta's recommended Guidelines range would have been 87 to 108 months. Calabretta's 120-month

---

[13] Effective November 1, 2014, the United States Sentencing Commission adopted Amendment 782, which modified section 2D1.1 of the Guidelines to lower the sentencing range for certain categories of drug-related offenses. As Calabretta was sentenced in September 2014, the amendment, which would have lowered his Total Offense Level by two points, did not apply to him. The Sentencing Commission, however, also adopted Amendment 788, effective November 1, 2014, which authorized retroactive application of Amendment 782 to certain defendants sentenced before its effective date. However, if the sentence were "based on" the defendant's career offender status, rather than "based on" section 2D1.1, the defendant would be ineligible for a sentencing reduction under the Amendments. See 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10; United States v. Flemming, 723 F.3d 407, 411-13 (3d Cir. 2013).

[14] Not only was there no objection from the Government in these instances, it also appears that it was Department of Justice policy not to object to such requests for early application of the Guidelines Amendment. See App. 82 n.1.

17

sentence, then, would constitute a 12-month upward variance from that Guidelines range.[15]

Moreover, we emphasize the sheer magnitude of the disparity between Calabretta's correct Guidelines range and his erroneously-enhanced Guidelines range. Designated a career offender, Calabretta had a Guidelines range of 188 to 235 months of imprisonment. Absent that enhancement, his range was calculated as 108 to 135 months of imprisonment — or perhaps 87 to 108 months of imprisonment with a Guidelines range reduction in anticipation of Amendment 782. The difference amounts to years of additional time in prison. By contrast, the Supreme Court held in Molina-Martinez that an erroneous Guidelines calculation that affected the defendant's range by seven months constituted plain error. 136 S. Ct. at 1344. The size of the miscalculation here thus weighs strongly in favor of the conclusion that the error affected Calabretta's substantial rights.

We hold that the Guidelines miscalculation here is sufficient to show a reasonable probability that his sentence would have been different absent the error. We cannot assume here that the sentencing court would have imposed

---

[15] Our dissenting colleague suggests that the applicability of Amendment 782 should not weigh in favor of exercising our discretion to remand for resentencing as retroactive relief is available to Calabretta now that he is no longer considered a career offender. However, a district court is limited in its ability to resentence a criminal defendant who is eligible for relief under Amendments 782 and 788. Unless a defendant received a sentencing departure pursuant to a Government motion regarding substantial assistance, a district court cannot grant a sentence reduction that is less than the minimum of the amended Sentencing Guidelines range. See 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10. Thus, if Calabretta could only seek relief through a sentencing reduction motion made pursuant to Amendments 782 and 788, the minimum sentence he could receive is 87 months of imprisonment. If, however, we remand for resentencing, the District Court could decide to impose a sentence as low as 60 months — the mandatory minimum sentence. This difference also weighs in favor of us exercising our discretion to afford relief.

18

the same sentence regardless of the career offender designation. To assume so — particularly when the record suggests that Calabretta's criminal history played a role in the ultimate sentence imposed — would "place us in the zone of speculation and conjecture." United States v. Zabielski, 711 F.3d 381, 387 (3d Cir. 2013) (quotation marks and alteration marks omitted) (applying harmless error review). Therefore, Calabretta has demonstrated that the District Court's error affected his substantial rights.

E.

The Supreme Court has recently reminded us that "[u]nder the Olano framework, appellate courts retain broad discretion in determining whether a remand for resentencing is necessary."[16] Molina-Martinez, 136 S. Ct. at 1348. But that broad discretion should not be exercised reflexively when the other elements of the plain error standard are met. Olano, 507 U.S. at 737 ("[A] plain error affecting substantial rights does not, without more, satisfy the [plain error standard], for otherwise the discretion afforded by the [standard] would be illusory."); see United States v. John, 597 F.3d 263, 288-89 (5th Cir. 2010) ("The discretion inherent in the plain-error standard is not tantamount to caprice, nor is it to be exercised because of sympathy or lack thereof for a particular individual or the public's or a judge's opinion as to the seriousness or heinous nature of a particular crime."). Our discretion is properly exercised in case-specific circumstances where an error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 736 (quotation marks omitted). That considerable standard has been met in this case.

---

[16] We note that, in Molina-Martinez, the Supreme Court described the Government's "concern over the judicial resources needed for the resentencing proceedings" as "unfounded." 136 S. Ct. at 1348-49. "[E]ven when a Court of Appeals does decide that resentencing is appropriate, a remand for resentencing, while not costless, does not invoke the same difficulties as a remand for retrial does." Id. (quotation marks omitted).

Calabretta's advisory Guidelines sentencing range would have been substantially lower if he had not been labelled a career offender. If the District Court had applied a two-level reduction in offense level in anticipation of Amendment 782 — like it did with two of Calabretta's co-defendants — then Calabretta's sentence represents a 12-month upward variance from the applicable Guidelines range. Nor is this a situation where the District Court made clear that Calabretta's career offender status did not have an effect on his sentencing range. At his sentencing hearing, the District Court repeatedly emphasized Calabretta's criminal history and lack of reform following his prior convictions.[17]

---

[17] Our dissenting colleague contends that the District Court "did not apply the career offender Guidelines range," and emphasizes repeatedly that the District Court indicated that Calabretta's sentence was the "minimum sentence sufficient." But the District Court did apply the career offender Guideline, even though it ultimately sentenced Calabretta to a below-Guidelines sentence. By indicating that it was imposing the "minimum sentence sufficient," the District Court was simply following the statutory text of section 3553(a), which requires district courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of criminal sentencing]." 18 U.S.C. § 3553(a). This "parsimony" principle is so inherent in the sentencing process that district judges need not even announce their adherence to it when sentencing a criminal defendant. See United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) ("[W]e hold that district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2)."). Merely quoting this language should not insulate a sentence from harmless error or plain error review. The District Court never indicated that it would have imposed the same sentence regardless of Calabretta's career offender status. Rather, the District Court imposed what it determined was the "minimum sentence sufficient" in considering the section 3553(a) factors — which includes "the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A). Thus, if the District Court were applying the section 3553(a) factors as is

Therefore, we cannot presume that the District Court would have likely imposed the same sentence had Calabretta not been designated a career offender. It is possible — perhaps even likely, given the below-Guidelines sentences of Calabretta and those of his co-defendants — that the District Court still would have imposed a below-Guidelines sentence under the correct Guidelines range.[18]

We are convinced that if we were to affirm Calabretta's sentence, which was imposed against the backdrop of a legally incorrect career offender designation

statutorily required, then its calculation of the "minimum sentence sufficient" necessarily included consideration of the recommended Guidelines range, including Calabretta's career offender status.

[18] Our dissenting colleague suggests that we are trying to "have it both ways" by "attempting to undertake such a prediction [of what the District Court will do on remand] while, at the same time, arguing that [the dissent is] undergoing a speculative analysis" of its own. Dissent Slip Op. at 9. We are not speculating about the District Court's actions. The dissent, however, reads such certainty into this scant record that it would lead to affirmance of a 120-month sentence despite a significant Guideline miscalculation. Our position is that any prediction of what the District Court would have done about sentencing if it had calculated the Guidelines correctly necessarily calls for speculation and that is the very reason there must be a remand. As noted earlier, the Supreme Court recently instructed that such uncertainty weighs in favor of resentencing, not affirmance. See Molina-Martinez, 136 S. Ct. at 1347 ("Where . . . the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights. Indeed, in the ordinary case a defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder. Absent unusual circumstances, he will not be required to show more."). The uncertainty here should be resolved by the District Court.

21

and a significantly higher Guidelines range, it would indeed seriously affect the fairness, integrity or public reputation of judicial proceedings. See Madrid, 805 F.3d at 1212 ("[W]hen the correct application of the sentencing laws would likely significantly reduce the length of the sentence, circuit courts have almost uniformly held the error to implicate fundamental fairness issues." (quotation marks omitted)); cf. Tai, 750 F.3d at 320 ("[W]e exercise our discretion to correct the error because it increased the sentence without the necessary fact finding and thereby affected the integrity of the proceedings."). Accordingly, we will exercise our discretion to award Calabretta relief.

## IV.

In sum, Calabretta has demonstrated the requisite elements to establish plain error, and we will exercise our discretion to award appropriate relief. We will thus vacate Calabretta's sentence and remand for resentencing.

FISHER, *Circuit Judge*, dissenting.

The majority holds that *Johnson v. United States*, 135 S. Ct. 2551 (2015), invalidates the residual clause of United States Sentencing Guideline § 4B1.2, removing Michael Calabretta's status as a career offender. I agree with this portion of the majority's opinion.[1]

But, that is where my agreement with the majority ends, as based on the sentencing record, the majority also finds that the District Court plainly erred when it considered Calabretta's now-removed career offender status in imposing its sentence. Though I agree that *Johnson* should apply in this case and that Calabretta no longer meets the career offender criteria, I disagree that the District Court's careful and thoughtful analysis at sentencing, which concluded in a sentence of 120 months' imprisonment, was plainly erroneous. I dissent specifically to address the erosion of the doctrine of plain error review in our Circuit.

---

[1] As the majority notes, *Johnson*'s application to § 4B1.2 was considered by the Eleventh Circuit in *United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015). The *Matchett* court was concerned that other sections of the Guidelines may be invalidated if the void-for-vagueness doctrine is applied to § 4B1.2 via *Johnson* and rejected the petitioner's argument that *Johnson* invalidates § 4B1.2's residual clause. I recognize Judge Pryor's well-written opinion and the possible future consequences the adoption of *Johnson* may have. *See also United States v. Ellis*, 815 F.3d 419, 422 (8th Cir. 2016) (finding that it is not "obvious that the guidelines are susceptible to a constitutional vagueness challenge").

On the other hand, several circuits and this Court—as outlined by the majority—have applied ACCA holdings to identically-worded sections of the Guidelines, including those courts that have already considered *Johnson* and applied it to § 4B1.2. Accordingly, based on our precedent, I join the majority in applying *Johnson*.

1

Michael Calabretta is no smalltime marijuana dealer, just selling some of his stash to a few friends to support a habit or to make ends meet. Rather, for more than two-and-a-half years, he participated in an extensive cross-country conspiracy that distributed over 100 kilograms of marijuana and he personally laundered more than ten million dollars in drug sale proceeds.

In spite of this formidable backdrop, Calabretta asks us to find that the District Court plainly erred when it imposed a 120 months' sentence, a sentence that was well below the career offender Guidelines range and can only be viewed as an act of leniency—the maximum leniency the District Court felt was deserved. We should not grant his request because, as the District Court clearly found, Calabretta's sentence was the "minimum sentence sufficient." J.A. 143.

If a defendant fails to timely object at the time a sentence is pronounced, as Calabretta failed to, the unpreserved issue is reviewed for plain error. *United States v. Flores-Mejia*, 759 F.3d 253, 259 (3d Cir. 2014). In order to satisfy the first three prongs of plain error, an appellant must establish that an error occurred, that the error was clear or obvious, and the error affected his substantial rights. If those requirements are met, we move to the fourth prong and determine if the "error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks omitted). If after a fact-intensive analysis we determine that the fourth prong has been established, we have the discretion to remedy the error. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Here, the fourth prong has not been met. The District Court based its sentence on Calabretta's serious and extensive underlying and prior criminal conduct, not on his career offender status—and it specifically found that 120 months' incarceration was the minimum sentence it would impose. This is not an unfair sentence. Nor is it one that will affect the integrity or public reputation of the judiciary. Further, the

2

majority's holding is troubling because the plain error test, specifically its fourth prong, requires stringent application. This holding will not only affect Calabretta but may affect future proceedings: a broadened plain error analysis will now apply in these cases. I therefore respectfully dissent from the majority's decision to remand for resentencing.

I.

Calabretta has a significant criminal history, and he committed a serious crime. The District Court carefully considered these concerns and the other factors under 18 U.S.C. § 3553(a) and determined that, despite the career offender Guidelines range (that it erroneously found applied), a 120 months' sentence was sufficient but was the *minimum* sentence sufficient. Where the District Court provides this type of specificity, remand is not required.

In considering Calabretta's sentence under the fourth prong, we must remember that remand is a discretionary action that we may take only after a full review of the underlying facts. There is no basis for exercising our discretion where evidence otherwise overwhelmingly supports the trial court's finding or is conclusive. *United States v. Vazquez*, 271 F.3d 93, 106 (3d Cir. 2001). Although a scant record cannot uphold a sentence based on an erroneous Guidelines range, "[t]he record in a case may show . . . that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range. Judges may find that some cases merit a detailed explanation of the reasons the selected sentence is appropriate." *Molina-Martinez v. United States,* 136 S. Ct. 1338, 1346 (2016). This rule of analysis, penned by the Supreme Court in its recent decision in *Molina-Martinez*, is based on evidence that indicates the Guidelines are heavily relied upon by district courts in arriving at a sentence—in most cases.

The Supreme Court observed that in a majority of cases, absent a Government motion, district courts imposed

sentences within the adopted Guidelines range.[2] This case is an outlier. And, the record provides a clear picture of what the District Court intended. Calabretta was subject to, based on the incorrectly calculated Guidelines range, 188 to 235 months' imprisonment. If § 4B1.2 had not applied, Calabretta's Guidelines range would have been 108 to 135 months' imprisonment. Ultimately, Calabretta was sentenced within the applicable Guidelines range that would have applied without the career offender enhancement, receiving a sentence of 120 months' imprisonment. This sentence was outside of the career offender Guidelines range by almost six years and was not the product of a Government motion. Calabretta's sentence is thus in the minority of cases cited in *Molina-Martinez* and upholding it would not garner ridicule of this Court.

This is unlike a case our sister court grappled with after *Molina-Martinez*. In *United States v. Hudson*, -- F.3d --, 2016 WL 2621093 (1st Cir. May 9, 2016), the First Circuit found plain error where the defendant received a sentence that was within an erroneously calculated Guidelines range, despite the district court's consideration of the defendant's "quite serious" conduct and extensive criminal history. *Id.* at *6–7. The *Hudson* court made this finding, however, because the career offender Guidelines range was the "anchoring point" for the imposed sentence. *Id.* at *7. Here, the District Court was aware of the career offender Guidelines range; carefully reviewed Calabretta's substantial underlying conduct, criminal history, and the other statutory sentencing factors; and found that 120 months' incarceration—a sentence substantially lower than the career offender Guidelines range—was the "minimum sentence sufficient" to suit the 18

---

[2] "In less than 20% of cases since 2007 . . . district courts imposed above- or below-Guidelines sentences absent a Government motion . . . [a] realit[y] that has led the Court to observe that there is considerable empirical evidence indicating that the Sentencing Guidelines have the intended effect of influencing the sentences imposed by judges." *Id.* (internal quotation marks omitted).

4

U.S.C. § 3553(a) factors. J.A. 143. The career offender Guidelines range was not the anchoring point here, the District Court specifically chose to not apply it to the final sentence.

The majority focuses on the District Court's failure to specifically state how Calabretta's career offender designation affected the final sentence, but the record reveals that the District Court provided detailed reasons for how it arrived at the final sentence and why it did not apply the career offender Guidelines range.

Calabretta pleaded guilty to both a distribution offense and a money laundering offense, a plea that allowed him to escape a weightier sentence if the full import of his conduct in the distribution scheme had been considered. At sentencing, the District Court reviewed the underlying investigation which resulted in the recovery of over $1 million from Calabretta's residence, which was a small part of the earnings from the distribution scheme, and a log book that indicated that Calabretta was involved in laundering drug money through casinos. The District Court found it questionable that Calabretta's claimed income, which Calabretta said was gambling income, was not a part of the drug distribution scheme. Moreover, the District Court considered the need for deterrence given the purely monetary motivation that drove Calabretta's conduct, noting that Calabretta and his co-conspirators believed "that moving large amounts of marijuana was a good way to make lots of money and the record reflects that he did that." J.A. 140.

As for Calabretta's prior criminal conduct, the District Court found especially alarming the fact that Calabretta had "two dead people whose deaths are directly attributable to [his], frankly, incredible conduct" of drag racing and road rage. J.A. 141. The District Court also considered Calabretta's eluding offense, where he drove up an exit ramp the wrong way, as well as other car thefts and burglaries that Calabretta had committed, which were not predicate offenses under § 4B1.2. Calabretta's serious criminal history was

5

bolstered by the fact that he committed the drug distribution offense only five years after he was released from jail on his prior convictions.

The District Court did not focus on Calabretta's career offender status. To the contrary, it specifically determined not to sentence him within the career offender range: "[T]he top of [the Guidelines range] was 235 months. . . . If I sentence you to the top of that [G]uidelines range, you'd be getting out when you were an old man." J.A. 143. The District Court instead focused on the specific case at hand—Calabretta's significant criminal history and culpability in the underlying offense. It found that it was "satisfied that a very substantial sentence is required here in order to, first of all, deter others who might be inclined to make millions of dollars quickly and easily from doing it; secondly, to get through to [Calabretta] that if [he] thought [he] had reformed, reforming by becoming a drug dealer is not reforming." J.A. 142. This led the District Court to find that a sentence of 120 months' imprisonment was the "minimum sentence sufficient"—a sentence that was well below the career offender Guidelines range.

The majority faults this dissent for its focus on the District Court's "minimum sentence sufficient" language. The District Court's "minimum sentence sufficient" statement, however, followed the District Court's admonition that it would not sentence Calabretta within a Guidelines range that would lead to his release when he was an old man. The Guidelines range that the District Court chose not to apply, to meet that goal, was the career offender Guidelines range. It is therefore more than reasonable to focus on the "minimum sentence sufficient" language because it followed the District Court's finding that it was not going to sentence Calabretta within the career offender Guidelines range.

Based on the record before us, there is no plain error. Affirming Calabretta's sentence would not undermine the integrity of this Court. The District Court provided a detailed explanation of the imposed sentence, a sentence unconnected

from the Guidelines. The District Court weighed Calabretta's potential for recidivism, and we should not ignore that consideration when conducting plain error review, especially where the sentence is far removed from the career offender Guidelines range. *United States v. Davis*, 602 F.3d 643, 652 (5th Cir. 2010) (considering the defendant's continued violations of the law in upholding his sentence even though the district court had conducted an erroneous Guidelines calculation at sentencing).[3]

The sentence imposed by the District Court fell within the now-applicable Guidelines range. The majority argues that the potential applicability of Amendment 782,[4] which would make Calabretta's 120 months' sentence fall outside of the Guidelines range, should change the analysis in this case. But it does not. Calabretta's Guidelines range would be 87 to 108 months after applying Amendment 782. Calabretta would be eligible to receive a sentence of 87 months' imprisonment if the District Court, through its discretion, found that sentence to be appropriate. The majority asserts that because of this amended Guidelines range, the District Court could also decide to impose a sentence as low as 60 months, the mandatory minimum sentence for Calabretta's charged conduct. We cannot predict what the District Court will do. The majority is attempting to undertake such a prediction while, at the same time, arguing that I am undergoing a speculative analysis by relying on the District Court's actual words during sentencing. The majority cannot have it both ways.

The large disparity between the prior applicable Guidelines range and the sentence imposed, a variance sentence without a Government motion, supports a finding

---

[3] The Fifth Circuit upheld *Davis*'s consideration of recidivism as a factor in denying a plain error claim after *Molina-Martinez* in *United States v. Martinez-Rodriguez*, -- F.3d --, 2016 WL 2772272 *4–5 (5th Cir. May 12, 2016).

[4] Calabretta's non-career offender status will allow him to seek a sentence that comports with Amendment 782 pursuant to 18 U.S.C. § 3582(c)(2).

under *Molina-Martinez* that the District Court gave a fair sentence that was unaffected by the career offender designation. Instead, the sentence was motivated by Calabretta's own conduct and was the "minimum sentence sufficient" to deter such conduct in the future. Still, the majority cites two of our opinions and a Tenth Circuit opinion in support of its position that such a finding would be "speculative." These cases—*United States v. Zabielski*, 711 F.3d 381 (3d Cir. 2013), *United States v. Tai*, 750 F.3d 309 (3d Cir. 2014), and *United States v. Madrid*, 805 F.3d 1204 (2015)—actually support affirmance.

*Zabielski* was determined under a harmless error analysis and is distinguishable from our analysis here, which is more stringent. Even if generally applicable, we held that "an error is more likely to be harmless when it is clear from the record that the district court decided to vary from the advisory Guidelines range." *Zabielski*, 711 F.3d at 388. It is clear from the sentencing record, for the reasons above, that the District Court was not considering the career offender Guidelines range. The majority's assertion that affirming would be based on "speculation" is unsubstantiated.

*Tai* is unhelpful to the majority for the same reasons. We held in *Tai* that where the record fails to provide guidance as to why a particular enhancement was provided, and the proper fact finding regarding that enhancement is not undertaken, this Court may find that the integrity of the proceedings are affected. *Tai*, 750 F.3d at 319–20. Under such circumstances, this Court cannot speculate as to what facts were considered by the district court. *Id.* at 320. Again, the record here provides guidance. The District Court reviewed the underlying circumstances, disregarded the career offender Guidelines range, and sentenced Calabretta well below the erroneous range.

Finally, in *Madrid*, the Tenth Circuit applied *Johnson* to Madrid, a defendant that had erroneously been found to be a career offender. The court focused on Madrid's sentence of 188 months, a sentence at the lowest end of the erroneous

career offender Guidelines range. The court found that the fourth prong had been met because the "correct application of the sentencing laws would likely significantly reduce the length of the sentence" because the now-applicable Guidelines range was 92-115 months. *Madrid*, 805 F.3d at 1212 (internal quotation marks omitted). The facts are distinguishable here. Calabretta was subject to a sentence within the lower, applicable Guidelines range and the District Court chose to forego a career offender sentence, opting to instead sentence Calabretta to 120 months, the "minimum sentence sufficient."

This Court should not fall into a trap of finding that every sentence that applied § 4B1.2's residual clause requires a remand. I am not suggesting that the fourth prong will never be met if *Johnson* is applied to others who were incorrectly found to be career offenders. But the sentence that Calabretta received is neither unfair nor will it undermine confidence in the judiciary. Consequently, I cannot assent to the majority finding otherwise.

## II.

Given the record before us, I believe the majority fails to adhere to this Court's duty to narrowly apply the plain error rule, especially once it reaches the fourth prong. We must be forward thinking and look not only at the underlying proceeding but also to how future judicial proceedings will be affected by our plain error analysis in each case. *United States v. Escalante-Reyes*, 689 F.3d 415, 457 n.22 (5th Cir. 2012) (Smith, J., dissenting). The majority's conclusion that the fourth prong has been met in this case will affect future

9

judicial proceedings by broadening the application of plain error review. Review which has already been eroding.[5]

This prong must be applied vigorously even where an error is found because of an intervening Supreme Court decision. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 737 (10th Cir. 2005) (discussing the applicability of *Johnson v. United States*, 520 U.S. 461, 470 (1997)). Consequently, it is important to carefully consider the fourth prong because "[r]eversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it." *Johnson*, 520 U.S. at 470 (citation omitted).

---

[5]Several of this Court's cases have resulted in remand based on a finding of plain error. A sampling of these cases is set forth below. In these cases, we either (1) did not include a fourth prong analysis, or (2) included only a sentence or less of analysis under the fourth prong. This is why it is important that this dissent focus on the fourth prong and that a finding of plain error should be a rarity. Those cases are cited here:

*United States v. Angell*, 588 F. App'x 161 (3d Cir. 2014); *United States v. Stinson*, 734 F.3d 180 (3d Cir. 2013); *United States v. Butler*, 531 F. App'x 241 (3d Cir. 2013); *United States v. Hill*, 468 F. App'x 133 (3d Cir. 2012); *United States v. Rose,* 365 F. App'x 384 (3d Cir. 2010); *United States v. Guinto*, 345 F. App'x 831 (3d Cir. 2009); *United States v. Polk*, 577 F.3d 515 (3d Cir. 2009); *United States v. Berry*, 553 F.3d 273, 286 (3d Cir. 2009); *United States v. Langford*, 516 F.3d 205 (3d Cir. 2008); *United States v. Voelker*, 489 F.3d 139 (3d Cir. 2007); *United States v. Wood*, 486 F.3d 781 (3d Cir. 2007); *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007); *United States v. Dickerson*, 381 F.3d 251 (3d Cir. 2004); *United States v. Broskoski*, 66 F. App'x 317 (3d Cir. 2003); *United States v. Syme*, 276 F.3d 131 (3d Cir. 2002); *United States v. Latimer*, 54 F. App'x 105 (3d Cir. 2002); *United States v. Knight*, 266 F.3d 203 (3d Cir. 2001); *United States v. Pollen*, 978 F.2d 78 (3d Cir. 1992); *United States v. Evans*, 155 F.3d 245 (3d Cir. 1998).

This public ridicule and encouragement of abuse of process is precisely what we must be aware of in ordering remand in this case. Even if Calabretta's substantial rights were affected, this "cannot, 'without more,' satisfy the fourth prong of the plain-error analysis, . . . and the Supreme Court has instructed that we are authorized 'to correct only particularly egregious errors' on plain-error review." *United States v. Corso*, 549 F.3d 921, 931 (3d Cir. 2008) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985) (internal citation omitted)).

In sentencing matters, this means that we must consider the effect that a too low or too high sentence may have. For instance, a sentence that is too-low will deny the public of its entitlement to a sufficient sentence, but one that is too-high will deny a defendant a certain amount of freedom. *United States v. Williams*, 399 F.3d 450, 456 (2d Cir. 2005). Here, the District Court specifically stated that imprisonment of 120 months was the "minimum sentence sufficient" based on Calabretta's criminal history and his underlying conduct while discounting the career offender Guidelines range. Calabretta received leniency at the sentencing phase, a leniency that he likely did not deserve, but the District Court made clear this was the only break that Calabretta was entitled to.

It is hard to determine what record, if not the one here, would not meet the majority's standard for plain error. A district court will now be required to specifically say, no matter what happens in the future, the sentence imposed is the only sentence it would give within its discretion. I do not believe that we should implement this rule. We must be especially cognizant of this consideration and ensure that plain error is found only in "exceptional circumstances [for] particularly egregious errors," is "used sparingly," and is not collapsed into a harmless error analysis. *Escalante-Reyes*, 689 F.3d at 433, 435. When applying the specific facts in this case, I believe that the majority has lost sight of the stringent test we must apply.

11

## III.

I dissent in order to caution this Court to review how the facts in this case will impermissibly broaden the doctrine of plain error review. The District Court's reasoned analysis at sentencing, and careful consideration of the correct sentence for a weighty drug dealer, requires Calabretta's sentence of 120 months' imprisonment to stand, and remand, accordingly, should not be granted.