KRAUSE, Circuit Judge,
concurring in the judgment.
I fully agree with the Majority that the District Court properly imposed the career offender enhancement in this case, given the directive of U.S.S.G. § 4A1.2(a)(2) that prior sentences be counted as separate unless there was no intervening arrest and “the sentences resulted from offenses con *144 tained in the same charging instrumente,] or ... were imposed on the same day,” Here, as the Majority notes, the record reflects that Appellant did have an intervening arrest between his two convictions and thus appears to qualify as a career offender on that ground alone. Maj. Op. 140-41 n.3. But, as the Majority also explains as its primary ground for affirming, even if Appellant’s sentences were not separated by an intervening arrest, the plain language of § 4A1.2(a)(2) provides that state and federal sentences are counted separately when they result from convictions charged in separate indictments and sentenced on separate days—even when those convictions are based on the very same conduct that happened to be charged by separate sovereigns. Maj. Op. 140-41.1 write separately to highlight the concerns raised by the application of § 4A1.2(a)(2) in that situation—an application that may not have been specifically intended by the Sentencing Commission and that creates significant tension with other aspects of the Guidelines.
By way of background, while the plain text of § 4A1.2(a)(2) now provides—as acknowledged even by Amicus from whom we invited briefing[1]—that state and federal sentences arising from the same criminal conduct count as separate, convictions towards career offender status, that was not always so. Prior to the November 2007 Amendment to the Guidelines, such sentences would have been counted as a single sentence because they would have been deemed “related” sentences, i,e., sentences that, with no intervening arrest, “resulted from offenses that (A)- occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.” U.S.S.G. § 4A1.2 comment, n.3 (2006). But such determinations ultimately proved “too complex” and confusing, causing “a significant amount of litigation ,.. concerning application of the rules,” and “circuit conflicts ,.. over the meaning of terms in the commentary that define when prior sentences may be considered ‘related.’ ”[2] U.S.S.G. Supp. to App. C, Amend. 709, at 238 (Nov. 2007). Thus, in 2007, the Commission amended the Guidelines to eliminate the “related” sentencing provision and to instruct that all prior sentences are considered separate unless there was no intervening arrest and “the sentences resulted from offenses contained in the same charging instrumente,] or ... were imposed on the same day.” U.S.S.G. § 4A1.2(a)(2) (2007).
The purpose of this Amendment, as explained by the Commission, was to “sim-pliffy] the rules for counting multiple prior sentences and promot[e] consistency in the application of the guideline.” U.S.S.G. Supp. to App. C, Amend. 709, at 238. And simplify, it did. But, in so doing, it also may have swept within its ambit certain sentences that the Commission did not specifically consider and, on reflection, would not treat as separate sentences. That is, neither the Amendment nor the Comments to the Amendment reflect that the Commission expressly considered that where the same misconduct happens to be charged by both state and federal authori *145 ties, it typically will be charged in different instruments and sentenced on different days; in other words, in that circumstance and absent an intervening arrest, the same criminal act invariably will be counted under § 4A1.2(a)(2), as amended, as two separate sentences for purposes of computing § 4Bl.l’s career offender enhancement.
Given the profound increase in sentence that follows from that enhancement, this result is a troubling one, and to the extent the Commission did not consider how § 4A1,2(a)(2) would apply in this circumstance, it may wish to do so for three reasons.
First, counting these sentences separately appears to conflict with Congress’s mandate that the Commission “provid[e] certainty and fairness in meeting the purposes of sentencing, [and] avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct.” 28 U.S.C. § 991(b)(1)(B). It is also in tension with the Commission’s own Policy Statement that it will seek “reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders” and “proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity.” U.S.S.G. § 1A1.1, p.s.
True, those goals may be achieved to some extent through departures in a typical case, but in career offender cases, the Guidelines limit departure to a single criminal history category and thus can have only a small effect on the sentence. See U.S.S.G. § 4A1.3(b)(3)(A). True, too, that district courts also have discretion to grant variances when a case falls “outside the heartland to which the Commission intends individual Guidelines to apply,” Kimbrough v. United States, 552 U.S. 85, 109, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (internal quotation marks and citation omitted), and they do not abuse their discretion when they grant a variance, as the District Court did here, based on a determination that a sentence is “greater than necessary in light of the purposes set forth in § 3553(a),” id. at 110, 128 S.Ct. 558 (internal quotation marks omitted). But, again, the availability of a variance is no panacea, for the Guidelines remain “in a real sense the basis for the sentence,” Peugh v. United States, — U.S.-, 133 S.Ct. 2072, 2083, 186 L.Ed.2d 84 (2013) (emphasis omitted), and sentencing eourts must still look to them as “the starting point and the initial benchmark,” Gall v. United States, 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).
Unquestionably, and with dramatic effect, the determination “whether or not a defendant is designated a career offender ... will shift the ‘benchmark’ or ‘framework’ of the district court’s sentencing determination by changing the recommended sentencing range.” United States v. Calabretta, 831 F.3d 128, 135 (3d Cir. 2016). And when that benchmark or framework is shifted by catapulting to career offender status a defendant who previously engaged in the very same conduct as others, but happens to have been charged and sentenced for that conduct by both federal and state authorities, the consequences for the defendant being sentenced are palpable, with the Guidelines contributing to the very harm they are meant to prevent— disproportionality and disparity in sentencing.[3]
*146 Second, it is not apparent how the goal of the career offender enhancement is served by counting as separate sentences a federal and a state sentence that stem from the same criminal conduct. The career offender enhancement was meant to address recidivism, with Congress directing the Commission to “assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized” for defendants who, at the time of sentencing, “hafye] previously been convicted of two or more prior felonies.” 28 U.S.C. § 994(h). The Commission responded with § 4B1.1, imposing a significant career offender enhancement on three-strike defendants and explicitly focusing on “the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate,” U.S.S.G. § 4B1.1 comment. background, and whose “[r]epeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation,” U.S.S.G. Ch.4, Pt.A, intro, comment. But where two of those three strikes arise from the very same criminal conduct, application of the enhancement does not accurately reflect Congress’s or the Commission’s considered decision to impose a sentence at or near the maximum authorized only on those offenders who have engaged in three or more felonies. Instead, it allows the draconian effect of § 4B1.1 to reach even two-time offenders, in effect, redefining career offender status.
Third, treating these sentences as separate also has implications for the reality and the appearance of fundamental fairness in sentencing. While an offender “has no substantive right to a particular sentence,” the Supreme Court has recognized that the “procedure which leads to the imposition of sentence” does implicate due process concerns. Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); see Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (recognizing due process concerns inherent in sentencing based on false criminal history). And those concerns are triggered where the serendipity of two sovereigns charging and sentencing the same conduct on different days results in the mandatory application of the career offender enhancement under the Guidelines, which then serve as the “benchmark” and “framework” for sentencing. Gall, 552 U.S. at 49, 128 S.Ct. 586; Calabretta, 831 F.3d at 135. Marcoccia, absent his intervening arrest, would have presented a case in point: Without the enhancement, his Guidelines range would have been 27 to 33 months’ imprisonment (based on an offense level of twelve and a Criminal History Category of V) see Maj. Op. 139 n.2; with it, his range was 151 to 188 months’ imprisonment (based on an offense level of twenty-nine and a Criminal History Category of VI), see J.A. 87.
With the frequency of joint and parallel federal-state investigations,[4] there are sure to be future cases that will present the issue squarely and will require sentencing courts to consider carefully the effect of § 4A1.2(a)(2) and the extent of any variance that may be appropriate to ensure the sentence imposed reflects the considerations specified in 18 U.S.C. § 3553(a) and avoids disproportionality and unwarranted *147 disparity in sentencing. Accordingly, if the Sentencing Commission did not intend the 2007 Amendment to § 4A1.2(a)(2) to cover this situation, I urge it to provide further guidance at the earliest opportunity.

. See Amicus Letter Br. 3. I join the Majority in extending sincere gratitude to Assistant Federal Public Defender Ronald A. Krauss, who, in a tight timeframe, submitted a thoughtful and helpful response to the Court’s request for assistance.

. For example, there was circuit tension over whether, to consider prior convictions that were consolidated for sentencing as "related,” courts should require that the record include a formal order of consolidation, see, e,g., United States v. Correa, 114 F.3d 314, 317 (1st Cir. 1997), or not, see, e.g., United States v. Huskey, 137 F.3d 283, 288 (5th Cir. 1998).

. As Amicus astutely observes, the Department of Justice’s Petite policy, which generally advises against a federal prosecution for the same acts already prosecuted at the state level is likewise insufficient to dispel these concerns as, in some cases, the federal sen *146 tence will be imposed before the state sentence, and, in any event, "the Government has reserved the right to apply or not apply its 'policy' in its discretion.” Petite v. United States, 361 U.S. 529, 533, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960) (Brennan J., concurring).

. See, e.g., Office of Nat’l Drug Control Policy, Exec. Office of the President, Nat'l Drug Control Strategy 37 (2016) (explaining that "[m]ulti-jurisdictional task force teams that implement strategies to pool resources and share information are the backbone of coun-terdrug enforcement efforts”).